In re Mark Edward LAMPKIN, Debtor.

Bankruptcy No. 97–14560–FM.

United States Bankruptcy Court
W.D. Texas,
Austin Division.

April 28, 1998.

---

Steven P. Boney, Austin, TX, for Debtor.

C. Daniel Roberts, Austin, TX, trustee.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held a trial on the Motion of the United States Trustee to Dismiss for Substantial Abuse Under 11 U.S.C. § 707(b) on April 20, 1998. All parties appeared. Upon the record established at that hearing, the argument of counsel, and the Court's own independent research, this Memorandum Opinion is being issued as written Findings of Fact and Conclusions of Law under Bankruptcy Rules 7014 and 7052.

This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2) and because it arises under 11 U.S.C. § 707(b). This Court, therefore, has the jurisdiction to enter a final order under 28 U.S.C. § 1334(a) and (b); 28 U.S.C. § 157(a) and (b)(1); 28 U.S.C. § 151 and the Standing Order of Reference in this District from the United States District Court.

## FINDINGS OF FACT

The Debtor filed this Chapter 7 bankruptcy case on December 1, 1997. At that time he had been employed by Advanced Micro Devices of Austin for two and one-half years as a semiconductor maintenance technician. He is single and 36 years of age. His gross monthly income is $4,611.00. Deducting payroll taxes and social security of $1,105.00 [1] and Medicare of $68.00, the Debtor's net income per month is $3,438.00. The Debtor also deducts voluntarily $705.00 from his monthly paycheck to go into a retirement account.

The Debtor, through his counsel, represented that the net effect of not placing the $705.00 into a voluntary retirement account on a monthly basis is that his net income would only increase about $565.00 since that $705.00 would then be subject to withholding and FICA.

The Debtor's Schedule J claims $2,820.00 of monthly expenses; but at the hearing, it came to light that several adjustments should be made. First, the Debtor's home was foreclosed shortly after this Chapter 7 case was filed by reason of delinquencies going back to April 1997. The Debtor's rental payment for his current residence is $750.00 per month, not the $1,000.00 per month listed on Schedule J. Second, the Debtor listed "allowances" of $100.00 per month, but admitted at the hearing that such was an error. Third, the Debtor lists three installment payments each in the amount of $50.00 for kitchen furniture, living room furniture, and stereo respectively. However, the Debtor's Statement of Intention only shows two creditors secured by personal property of any value, one being the Room Store with furniture as collateral for a

---

1. There was no evidence placed into the record as to what portion of this amount represents payroll taxes and whether that amount is more than is required to pay the Debtor's income taxes on a yearly basis. This number seems high, but there is no evidence in the record from which a determination can be made as to whether or not it is, in fact, high.

debt in the amount of $5,561.80 and the other being Hurley State Bank with a computer being the collateral in the amount of $4,698.67. Both of these debts are to be reaffirmed. The information on the Statement of Intention does not match the Schedule J which shows three installment payments for furniture and a stereo and is silent about any debt for a computer. This leads the Court to question the accuracy of Schedule J with regard to the alleged three installment payments of $50 each for furniture and stereo.

If we add $565.00 [2] to the Debtor's take home monthly income, we reach a number of $3,298.00. If we deduct the $250.00 reduction in home/rent expense and the $100.00 for allowances from the amount on Schedule J, we reach a balance of $2,470.00. Notwithstanding, therefore, the discrepancy on the three installment payments of $50.00 each and notwithstanding a monthly allowance of $150.00 for "vacations" and $190.00 for recreation and entertainment, which in themselves are highly questionable, we have a net monthly disposable income of $828.00, which over 36 months would generate $29,808.00 for payment on the scheduled unsecured claims of $76,750.72 for a dividend of 37% after deducting the 5% trustee's fee and assuming all unsecured creditors file a claim, which, of course, they never do.

### CONCLUSIONS OF LAW

 The Court is aware of the various cases that attempt to define "substantial abuse" as that term is used in 11 U.S.C. § 707(b). See, *In re Kelly*, 841 F.2d 908, 913–15 (9th Cir.1988), and *U.S. Trustee v. Harris*, 960 F.2d 74 (8th Cir.1992), *Fonder v. U.S.*, 974 F.2d 996 (8th Cir.1992). These cases look primarily at the debtor's ability to repay the debts for which a discharge is sought. *In re Green*, 934 F.2d 568 (4th Cir.1991) is authority, for a totality of the circumstances analysis. *In re Krohn*, 886 F.2d 123, 126–28 (6th Cir.1989) states that the proper inquiry is whether the totality of the circumstances demonstrate the absence

of the degree of honesty and/or need contemplated by § 707(b) and that, in the right case, the debtor's ability to repay can alone justify dismissal. There appears to be no controlling precedent in the 5th Circuit at this time.

This Court has previously adopted a test which considers the totality of the circumstances with emphasis on the Debtor's ability to repay debts under a Chapter 13 Plan much like the *Krohn* test. That respected jurist in the Northern District of Texas, the Honorable John C. Akard, has recently opined similarly. See *In re Heasley*, 217 B.R. 82 (Bankr.N.D.Tex.1998).

Circumstances which have been identified as having bearing on the issue of substantial abuse by the Fourth Circuit Court of Appeals in *In re Green*, 934 F.2d at 572, are analyzed below.

1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment? In this case no record was made as to the reason the bankruptcy petition was filed. Mr. Lampkin was available to testify but was not called by movant. Therefore, we are left to speculate as to why it was filed.

2) Whether the Debtor incurred cash advances and made consumer purchases far in excess of his ability to pay? One can logically conclude from an examination of the schedules filed by the Debtor that the cause of this filing was that the Debtor incurred charges on his multiple credit cards over a period of several years prior to the filing of the bankruptcy which were primarily in the nature of consumer purchases and which far exceeded this Debtor's ability to repay according to the terms of the credit card agreements. But, the Court was not asked to take judicial notice of the Debtor's schedule of debts. So, for the purposes of this contested matter, we cannot conclude one way or the other.

3) Whether the Debtor's proposed family budget is excessive or unreasonable? The Debtor's proposed income budget is unreasonable in that it allows the Debtor to contin-

---

**2.** The net amount of the increase in net income from disallowance of the Debtor's $705.00 volun- tary retirement deduction.

ue putting aside from the creditors' reach $705.00 per month in voluntary retirement contributions. Such deduction is simply not allowed by current law. See *In re Harshbarger*, 66 F.3d 775 (6th Cir.1995), *In re Cornelius*, 195 B.R. 831, 835 (Bankr. N.D.N.Y.1995), *In re Festner*, 54 B.R. 532, 533 (Bankr.E.D.N.C.1985), *In re Fountain*, 142 B.R. 135, 137 (Bankr.E.D.Va.1992), *In re Cavanaugh*, 175 B.R. 369, 373 n. 3 (Bankr.D.Idaho 1994), *In re Ward*, 129 B.R. 664, 668 (Bankr.W.D.Okla.1991).

4) Whether the Debtor's Schedules and Statement of Current Income and Expenses reasonably and accurately reflect the true financial condition? There are also problems with the Debtor's budgeted expenses. Housing is $250.00 less than Schedule J reflects. The Debtor pays no allowances contrary to his filed Schedule J; therefore, another $100.00 comes off the expense amount. And, the Debtor asks the creditors to pay $150.00 per month for his yearly vacation and $190.00 per month for other recreational activities. That is too much. It is 10% of his net monthly income. Under the circumstances of this case, that is unreasonable. Further, there are the discrepancies on installment payments between Schedule J and the Debtor's Statement of Intentions. As a result, the Court finds that the Debtor's Schedules I and J, (his Statement of Current Income and Expenses) did not reasonably and accurately reflect his true disposable income when the case was filed for the reasons stated immediately above.

5) Whether the petition was filed in good faith? There is no independent evidence in the record that could be used to ascertain or opine upon the Debtor's "good faith" in filing the petition or his lack thereof. It is preferable to address this particular factor when the Debtor actually testifies at the hearing which did not occur here.

Although the *Green* case talks about the foregoing five factors as being a "totality of the circumstances" evaluation, it appears to this Court that items 3 and 4 are simply a restatement of factors considered in determining the extent to which there is disposable income and should be better be viewed as part of that inquiry. The other three factors,

while relevant, are clearly not an exhaustive list.

The Sixth Circuit in *In re Krohn*, 886 F.2d at 126, defined "substantial abuse" by stating that the purpose Congress had in using that term was to deny Chapter 7 relief to the "dishonest or non-needy debtor". See also, *In re Walton*, 866 F.2d 981, 983 (8th Cir. 1989) citing *S.Rep. No. 65*, 98th Cong., 1st Sess. (1983). The Sixth Circuit further stated that it was the job of the Bankruptcy Court to "ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is 'honest', in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is 'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for the liquidation of his assets." *Krohn*, 886 F.2d at 126. The *Krohn* court said, further, that substantial abuse could be "predicated upon either lack of honesty *or* want of need." *Id.* (Emphasis added).

Factors to be considered in addition to the amount of the Debtor's disposable income are identified as "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly with depriving him of adequate food, clothing, shelter, and other necessities." *Id.*

None of the foregoing factors, save perhaps the last one, were addressed in this record directly as the U.S. Trustee seems to be relying totally on the amount of the Debtor's disposable income as being dispositive.

Here, this Debtor does qualify for Chapter 13. In *Krohn*, the debtor did not qualify for Chapter 13 and the Circuit dismissed his case notwithstanding because the bankruptcy judge had found state remedies available in addition to "good, old-fashioned belt tightening". *Id.* In this case there were neither state remedies nor private negotiations with

potential to ease this Debtor's financial predicament identified. However, it does appear that there is no forecastable or reasonably identifiable potential interruption to the Debtor's employment which he has had for two and one-half years. And, Debtor's expenses can be reduced below what he claimed on Schedule J as set forth above.

This record is far from an ideal one. The Debtor enjoys a presumption of entitlement to relief in the form of a discharge of debts. The U.S. Trustee must prove a *substantial* abuse. The only proof offered by the U.S. Trustee is the existence of a net disposable monthly income of $828.00 for this single person (which is approximately 25% of his net take home pay). So, in the language of the *Krohn* case, the inquiry is whether there is either a lack of honesty or a lack of need. It is virtually impossible to opine on the Debtor's honesty since he was not called to testify, but the discrepancies in his schedules are not so severe as to lead the Court to conclude that this Debtor is dishonest. So, is he needy? Clearly not. He has 25% of his net income, or $828.00 a month, as disposable income even after allowing him the highly questionable monthly deductions of $150.00 for vacations and $190.00 for recreation. If this money is used over the next three years to make a repayment to the Debtor's creditors, it will result in a dividend of close to 40% for scheduled, unsecured creditors. Under these circumstances, it would be a substantial abuse of the bankruptcy system to allow this Debtor a Chapter 7 discharge.

Accordingly, an Order of even date will be entered sustaining the Motion and giving the Debtor twenty (20) days to convert to a Chapter 13, lest this case be dismissed.