**In re Cathleen M. NATION, Debtor.**

**Bankruptcy No. 98 B 22952(ASH).**

United States Bankruptcy Court,
S.D. New York.

July 26, 1999.

able income" under 11 U.S.C. §§ 1325(b)(1)(B) and (b)(2)(A). For the reasons below stated, I conclude that pension contributions and loan repayments constitute "disposable income" within the statutory definition. Accordingly, I grant the debtor's motion for an order directing her employer, the New York City Department of Health, and the New York City Employees' Retirement System (N.Y.CERS) (collectively "Respondents") to cease making such deductions during the pendency of the debtor's Chapter 13 case.[1]

The debtor filed her Chapter 13 petition on November 13, 1998. The debtor's plan called for thirty-six monthly payments of $165, which would provide for some 15% of unsecured claims. The plan payments did not include monthly deductions totaling more than $123 taken from the debtor's paychecks[2] by Respondents for contributions and loan repayments to the debtor's pension plan. Upon discovering these payroll deductions, the Chapter 13 Trustee (the "Trustee") advised the debtor's counsel that he would object to confirmation of the plan because it did not include all of the debtor's disposable income, as defined in Section 1325(b). The debtor then filed this motion to have the pension deductions stopped. Respondents opposed the motion. The Trustee filed a memorandum in support of the debtor's motion and in objection to the debtor's plan as originally filed.

Carl Jay Nathanson, Sheldon Barasch, New York City, for debtor by Robert Garner, of counsel.

Jeffrey L. Sapir, White Plains, NY, Chapter 13 Trustee, by Jody L. Kava.

Michael D. Hess, Corporation Counsel for the City of New York, New York City, for the New York City Employees' Retirement System and Department of Health by M. Diane Jasinski.

## DECISION GRANTING DEBTOR'S MOTION TO ENJOIN PAYROLL DEDUCTIONS FOR PENSION CONTRIBUTIONS AND PENSION LOAN REPAYMENTS

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

At issue in this contested matter is whether mandatory payroll deductions for pension contributions and pension loan repayments are part of the debtor's "dispos-

### Discussion

■ Preliminarily, it should be noted that the mandatory payroll deductions here in question constitute property of the debtor's estate under 11 U.S.C. § 1306(a)(2). Moreover, the deductions are taken not for the purpose of satisfying some ongoing, post-petition obligation of the debtor to some third party, such as

1. The Court has jurisdiction over the parties and core jurisdiction over the subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A) and (L), and the standing order of reference dated July 10, 1984 (Robert J. Ward, C.J.).

2. Since the filing in November 1998, Respondents have continued to deduct from the debtor's bi-weekly paychecks $37.15 and $24.53 for pension contributions and pension loan repayments, respectively.

income tax withholding or union dues. These deductions are placed in a savings or pension account for the debtor's own benefit, generally exempt from the claims of creditors, and available to the debtor at her option after her unpaid creditors' claims have been discharged.

Chapter 13 of the Bankruptcy Code permits a debtor to retain all her property and pay unsecured creditors all or a portion of their claims without interest over a three- to five-year period. The debtor is entitled to a discharge of claims remaining unpaid upon completion of the plan. The value of total plan payments must be "not less than" the amount that would be paid to unsecured claims if the estate were liquidated under Chapter 7. 11 U.S.C. § 1325(a)(4).

The determinative statutory provision here is 11 U.S.C. § 1325(b). Section 1325(b)(1) states that a plan cannot be confirmed unless (A) it provides for 100% payment of unsecured claims, or (B) "the plan provides that *all* of the debtor's projected *disposable income* ... will be applied to make payments under the plan" (emphasis supplied). Section 1325(b)(2) defines "disposable income" as income "which is not reasonably necessary to be expended—(A) for the maintenance or support of the debtor or a dependent of the debtor...."

■ Money paid or contributed by a debtor into any type of account, fund, plan or other repository for the debtor's own present or future benefit for savings, pension, or similar purposes is on its face "not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor." If such money were "necessary for the maintenance or support of the debtor," obviously the debtor could not put it in a savings or pension account. In addition to the clear language of the statute, most courts

have perceived an inherent unfairness in a debtor paying himself by funding his own savings account, retirement plan, or pension fund while paying creditors only a fraction of their just claims. For these reasons the great majority of courts have held under Section 1325(b) that funds contributed to savings or pension plans constitute "disposable income" that must be paid to creditors under a plan if the plan is to be confirmed. *See In re Jaiyesimi,* 236 B.R. 145 (Bankr.S.D.N.Y.1999); *In re Delnero,* 191 B.R. 539, 542 (Bankr. S.D.N.Y.1996); *In re Cornelius,* 195 B.R. 831, 835 (Bankr.N.D.N.Y.1995); *In re Devine,* 1998 WL 386380, at *8 (Bankr. E.D.Pa.1998); *In re MacDonald,* 222 B.R. 69, 75 (Bankr.E.D.Pa.1998); *In re Moore,* 188 B.R. 671, 675 (Bankr.D.Idaho 1995); *In re Davis,* 1994 WL 740454, at *2 (Bankr.D.Idaho 1994); *In re Cavanaugh,* 175 B.R. 369, 373 (Bankr.D.Idaho 1994); *In re Festner,* 54 B.R. 532, 533 (Bankr. E.D.N.C.1985); *In re Lampkin,* 221 B.R. 390, 393 (Bankr.W.D.Tex.1998); *In re Watkins,* 216 B.R. 394, 396 (Bankr. W.D.Tex.1997); *In re Feldmann,* 220 B.R. 138, 145 (Bankr.N.D.Ga.1998); *In re Bicsak,* 207 B.R. 657, 661 (Bankr.W.D.Mo. 1997); *In re Hesson,* 190 B.R. 229, 238 (Bankr.D.Md.1996); *In re Fountain,* 142 B.R. 135, 137 (Bankr.E.D.Va.1992); *In re Scott,* 142 B.R. 126, 133 (Bankr.E.D.Va. 1992); *In re Ward,* 129 B.R. 664, 668 (Bankr.W.D.Okla.1991).

Precisely the same statutory and equitable analysis applies to a debtor's repayment to a savings or pension plan of money "borrowed" from the plan. The Second Circuit has stated that when a person "borrows" from his own pension account, this does not give rise to a true "loan" in the sense of a legally enforceable debt or claim. *New York City Employees Retirement System v. Villarie (In re Villarie),* 648 F.2d 810, 812 (2d Cir.1981).[3] But

---

**3.** Respondents acknowledge that NYCERS is barred by statute from suing to recover the debtor's pension loan in this case under New York Retirement and Social Security Law § 613–b(1). If the debtor were to resign, retire, or die without repayment, the unpaid

whether or not such a borrowing can give rise to a "claim" under the Bankruptcy Code, most courts hold that repayments into a savings or pension account, like de novo contributions, are "disposable income" that must be paid into the plan for the benefit of creditors. *See In re Harshbarger*, 66 F.3d 775, 777 (6th Cir.1995); *In re Jaiyesimi; In re Delnero*, 191 B.R. at 544; *In re Jones*, 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991); *In re Goewey*, 185 B.R. 444, 446 (Bankr.N.D.N.Y.1995); *In re Devine*, 1998 WL 386380 at *8; *In re MacDonald*, 222 B.R. at 75; *In re Scott*, 142 B.R. at 134. To the contrary, *see In re Buchferer*, 216 B.R. 332 (Bankr. E.D.N.Y.1997) (holding that a pension loan constitutes a secured debt).

Respondents' principal argument is that the pension contributions and loan repayments are "mandatory" under Section 613(a) of the New York Retirement and Social Security Law ("NYRSSL") and implementing regulations promulgated by NYCERS and, because they are mandatory, they cannot be deemed part of the debtor's "disposable income." Lending some credence to this argument, several decisions have held that contributions to pension plans are to be included in the calculations of disposable income "as long as they are not mandatory," *see, e.g. In re*

*Delnero*, 191 B.R. at 542; *In re Cornelius*, 195 B.R. at 835, and one court held that pension contributions were "compulsory and a condition of [the debtor's] continued employment as a public school teacher" and therefore not "disposable income." *In re Colon Vazquez and Mejias*, 111 B.R. 19, 20 (Bankr.D.P.R.1990).

In the instant case, it is by no means clear that the debtor's pension contribution and repayments are "mandatory" in any material, consequential sense.[4] Nevertheless, the NYRSSL[5] and NYCERS regulations[6] on their face do require the payroll deductions, and it appears that Respondents deduct the amounts in question from the debtor's paycheck irrespective of the debtor's wishes, which has required her to make this motion. In that sense at least, the payroll deductions are "mandatory."

■ Some courts have inquired whether the required pension contribution was a "condition of employment" as a test of whether the contribution was truly "mandatory," *see In re Jaiyesimi; In re Colon Vazquez and Mejias*, 111 B.R. at 20, perhaps with the thought that a "condition of employment" is beyond the scope of a court's power. In this Court's opinion, this test appears to address the wrong issue. The Bankruptcy Court has the

---

balance of the "loan" would simply reduce the benefits payable to her or her estate.

4. Without material consequences for noncompliance, "mandatory" is simply a label without effect. The rules governing the debtor's contributions do not give rise to any negative repercussions with respect to her continued employment, should the deductions be discontinued. Rule 20(c) of the New York City Employees' Retirement System Rules states that 3% of earnings must be contributed in order to receive credit for service time. However, it appears that the debtor would continue to receive credit for service time if the contributions were discontinued. In addition, Rule 20(c) says "[a]dministrative procedures can lead to less than the required contributions being deducted." The plain language of the rules along with the actual consequences that would result does not indicate that continuing the pension contributions

is mandatory. If these contributions were halted, the debtor would not lose her job. The only apparent harm that would result to her would be an adjustment to her retirement allowance to reflect the deficiency in payment.

5. NYRSSL § 613(a): "Members *shall* contribute three percent of annual wages to the retirement system in which they have membership. The head of each retirement system shall promulgate such regulations as may be necessary and appropriate with respect to the deduction of such contribution from members' wages and for the maintenance of any special fund or funds with respect to amounts so contributed." (Emphasis supplied)

6. NYCERS Rule 20(c): "Articles 14 and 15 of the RSSL require that 3% of earnings be deducted from a member's check in order to receive service credit for the time paid."

power not only to enjoin an employer from continuing involuntary payroll deductions, but also to enjoin it from inflicting other consequences, such as termination of employment, which would conflict with the Bankruptcy Code. The real issue is whether the statute, regulation or private contract intrudes upon the debtor-creditor relationship in a manner which is preempted by the Bankruptcy Code.

The problem with the NYRSSL and the NYCERS regulation, mandating payments to the debtor's own pension account, is that their implementation conflicts with a debtor's right to confirm a Chapter 13 plan and her creditors' entitlement to receive all of the debtor's disposable income under Section 1325(b)(1)(B). Under the Bankruptcy Code and case law, a debtor may not pay into her own savings account money not needed for living expenses that could be paid to creditors. The effect of Respondents' position, if sustained, would be to create a special, favored class of debtors (and their correspondingly disadvantaged creditors) who pay themselves rather than their creditors by reason of an employer-created "mandatory" savings plan.

The issue thus presented is: Can an employer, whether governmental or private, supervene the Bankruptcy Code by the simple expedient of a statute or regulation, or a contract (e.g., a collective bargaining agreement) in the case of a private employer, providing for "mandatory" savings or pension contributions in conflict with the purpose and intended effect of 11 U.S.C. § 1325(b)(2). In this Court's view, the answer must be "no". National policy codified in a statute of Congress such as the Bankruptcy Code must be given primacy over local enactments and private contracts.

The Supremacy Clause of the Constitution mandates:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. The statute and regulations at issue directly conflict with the Bankruptcy Code's requirement that all property listed under Sections 541 and 1306 be included as property of the estate, as well as Section 1325's requirement that all disposable income be included in the plan. This conflict between the Bankruptcy Code and the pension regulations is fundamental. The Supremacy Clause requires that state statutes and regulations be preempted by the Bankruptcy Code insofar as they are inconsistent with the fundamental purpose and provisions of the Code.

■ Congressional preemption of state laws exists where such preemption is either explicitly stated or where Congress has made a comprehensive scheme of regulation that shows that "Congress left no room to supplement it." *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (quoting *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). Such preemption occurs where federal and state law conflict, making compliance with both an impossibility, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 204, 103 S.Ct. 1713 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). *See also In re Davis,* 170 F.3d 475, 482 (5th Cir.1999); *Sears, Roebuck, and Co. v. O'Brien,* 178 F.3d 962, 965–66 (8th Cir.1999); *Pereira v. United Jersey Bank,* 201 B.R. 644, 678 (S.D.N.Y. 1996).

Conflicts in laws or legal rules that directly burden the debtor-creditor relationship have been consistently resolved in favor of the Bankruptcy Code. *See National Collection Agency v. Trahan,* 624 F.2d 906, 907 (9th Cir.1980) (holding a statutory exception for tax debts is preempted by the Bankruptcy Code); *In re Andover Togs,* 231 B.R. 521, 543 (Bankr.S.D.N.Y. 1999) (disallowing common law doctrine of surrender and acceptance as inconsistent with the Code); *In re Rancourt,* 153 B.R. 380, 383 (Bankr.D.N.H.1993) (preempting tenants' right of first refusal as inconsistent with the liquidation provisions of the Code); *In re McLean,* 105 B.R. 928, 932 (Bankr.W.D.Mo.1989) (preemption of doctrine of surrender by the Code); *Pereira v. United Jersey Bank,* 201 B.R. 644, 679 (S.D.N.Y.1996) (preemption of setoff claims as an obstacle to accomplishing the full purposes of Sections 547(b) and 553); *In re Hecht,* 41 B.R. 701, 706 (Bankr. S.D.N.Y.1984) (holding state laws on setoff preempted by Code Section 553). State statutes or regulations requiring the debtor to make "mandatory" pension contributions, as in this case, pose just such an obstacle to Congress' intent in establishing requirements for Chapter 13 debtors and cannot be sustained.

■ The fundamental effect of the NYRSSL and the NYCERS regulations here is to mandate a distribution of the assets of the estate to the debtor herself in derogation of creditors' rights and express provisions of Chapter 13 of the Bankruptcy Code. Application of the statute and regulations achieves a result that undermines the Code's overall purpose by allowing the debtor to bestow a future benefit on herself while creditors absorb an even greater loss. The regulations obstruct the "accomplishment and execution" of Congressional intent. Although desirable from a debtor's standpoint, pension contribution regulations must yield to the Bankruptcy Code. Preemption is appropriate in this instance and the pension contribution deductions must be disallowed and the money previously deducted for them included in the debtor's disposable income. Therefore, NYRSSL § 613(a) and NYCERS Rule 20(c) are preempted to the extent they create an obstacle to fulfillment of the Bankruptcy Code's purpose.[7]

■ Finally, Respondents argue that "it is critical for tax purposes that the installment payments on the pension loan continued uninterrupted," because if repayments are not made for ninety days "the pension loan will become a taxable distribution" with an additional 10% penalty. It may well be that the interruption of either pension contributions or loan repayments during the debtor's plan may have adverse tax consequences for the debtor in the near or long term. But the courts have not found tax consequences that may arise either during or after a plan has been completed to be grounds for ignoring the statutory requirement that the debtor pay all his disposable income into the plan. *See In re Jaiyesimi; In re Delnero,* 191 B.R. at 544; *In re Scott,* 142 B.R. at 135.

Theoretically, a situation might arise from suspension of pension contributions or loan repayments either in a tax or employment context which would genuinely impair a debtor's ability to fund a Chapter 13 plan and which could not be prevented or remediated by the Bankruptcy Court upon proper application by the debtor. But no such situation exists here.[8]

7. Congress did not intend for the Bankruptcy Code to preempt *all* state law, but the areas where preemption does not apply are extremely limited. *See Midlantic v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 505, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Situations that threaten public health and safety have been specifically excepted from preemption by the Code. *Id.* at 502, 106 S.Ct. 755. *But see In re Smith–Douglass,* 856 F.2d 12, 16 (4th Cir.1988).

8. The affirmation in support of the debtor's motion states: "While, upon information and belief, this payroll deduction is mandatory and not voluntary, the debtor cannot be terminated from her job if she ceases the pension contribution. The debtor is not near

Accordingly, the debtor's motion is granted. Debtor's counsel will prepare and settle an order consistent with this decision.

retirement so the loss of these contributions for approximately three years will not substantially affect her future retirement benefits. If the pension contribution ceases, the debtor will be able to pay her creditors a larger percentage over the remaining period of the plan."