In re Sharlene De Ann
TAYLOR, Debtor.

The New York City Employees'
Retirement System,
Appellant,

v.

Jeffrey L. Sapir, Standing Chapter 13
Trustee for the Southern District of
New York and Sharlene De Ann Tay-
lor, Appellees.

No. 99 Civ. 9618 AKH.

United States District Court,
S.D. New York.

May 5, 2000.

**38**

M. Diane Jasinksi, James J. Dwyer, New York City, for appellant City of New York.

Sheldon Barash, New York City, for appellee Sharlene De Ann Taylor.

Jeffrey Sapir, Jody Kava, White Plains, New York, for appellee Trustee.

### MEMORANDUM & ORDER AFFIRM-ING BANKRUPTCY COURT

HELLERSTEIN, District Judge.

The question presented in this bankruptcy appeal is whether the Bankruptcy Court erred in holding that pension withholdings from a Chapter 13 debtor's salary, required to pay the debtor's contributions to the New York City Employees' Retirement System ("NYCERS") pursuant to elections made by the debtor under Section 613(a) of the New York Retirement and Social Security Law,[1] constitute "disposable income" as defined in Section 1325(b)(2) of the Bankruptcy Code, 11 U.S.C. § 1325(b)(2), and as such are necessarily includable in the debtor's plan to pay outstanding debts and obtain her discharge. I hold, after de novo review, *see,* Fed.R.Bank.P. 8013; *Matter of Fugazy Express, Inc.,* 124 B.R. 426, 430 (S.D.N.Y. 1991), *appeal dismissed,* 982 F.2d 769 (2d Cir.1992), that such amounts are includable in the Chapter 13 debtor's plan, and I therefore affirm the decision below.

*History of the Case*

On June 15, 1998, Sharlene De Ann Taylor filed a voluntary Chapter 13 bankruptcy petition. Taylor was employed as a secretary by the New York City Housing Authority, earning $22,790 per annum. She supported two dependents, incurred

---

**1.** Section 613(a) [Eff. until June 30, 1999] provided:

Members shall contribute three percent of annual wages to the retirement system in which they have membership. The head of each retirement system shall promulgate such regulations as may be necessary and appropriate with respect to the deduction of such contribution from members' wages and for the maintenance of any special fund or funds with respect to amounts so contributed.

too many debts, was unable to meet her monthly rent payments, and faced eviction.[2]

Chapter 13 of the Bankruptcy Code allows a debtor, like Ms. Taylor, to obtain a discharge by either distributing her assets to creditors, if creditors can be paid in full by that means, or distributing to her creditors all of her "disposable income" expected to be earned over a three year period. In the latter option, the debtor is eligible for discharge even if creditors are not paid in full. Taylor chose this latter option.

The debtor proposed to pay the creditors $250 monthly for three years, contending that this was all of her "disposable income." The Trustee announced an intention to object on the ground that the debtor had failed to include in her "disposable income" that portion of her salary that was deducted for her pension savings: $134.20 per month for pension contribution to NYCERS and $43.55 as a repayment to NYCERS of a pension loan. The debtor then moved to include those pension contributions in her Chapter 13 Plan (the "Plan"), believing that cessation of contribution payments would enable her to pay her creditors in full. Ex. C. ¶¶ 5–6. The City objected, claiming that the pension contributions and deductions were not "disposable income," but were statutorily mandated payments.

On July 8, 1999, the Bankruptcy Judge, the Hon. Cornelius Blackshear, ruled that the Debtor's pension contributions and loan repayments were disposable income and thus required by law to be included in the Plan. *In re Jaiyesimi*, 236 B.R. 145, 147 (Bankr.S.D.N.Y.1999); *see* 11 U.S.C. § 1325(b)(1)(B). By order of August 5, 1999, Taylor was directed to discontinue pension contributions to NYCERS[3] during the effective period of her Chapter 13 Plan, but the Order was stayed pending NYCERS' appeal to this court.

Discussion:

The purpose of Chapter 13 of the Bankruptcy Code is to allow "a debtor to retain all her property and pay unsecured creditors all or a portion of their claims without interest over a three to five-year period. The debtor is entitled to a discharge of claims remaining unpaid upon completion of the plan. The value of total plan payments must be 'not less than' the amount that would be paid to unsecured claims if the estate were liquidated under Chapter 7." *In re Cathleen M. Nation*, 236 B.R. 150, 152 (Bankr.S.D.N.Y.1999) *quoting* 11 U.S.C. § 1325(a)(4).

Section 1325(b)(1) of the Bankruptcy Code provides that a Bankruptcy Court may approve a plan, only if, as of the effective date of the plan:

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

"Disposable income" is defined as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A).

The issue of this appeal is whether Taylor's contributions and loan repayments are "reasonably necessary" for her "maintenance or support." *Id.* The debtor is expected to make a "substantial effort"

---

2. Oral Arg. Trs. of Jan. 4, 2000, at 3, 19.

3. Membership in NYCERS is governed by N.Y. Retire. & Soc.Sec.Law § 600 *et seq.*, the New York City Administrative Code, and other rules and regulations. Employees of New York City contribute to the plan, N.Y. Retire. & Soc.Sec.Law § 613, and may borrow from the plan, subject to repayment. *See* N.Y. Retire. & Soc.Sec.Law § 50(b) and N.Y.C.Admin.Code § B3–28.0.

to repay creditors, and to incur financial sacrifices.

> Chapter 13 relief is essentially equitable, and contemplates a substantial effort by the debtor to pay his debts. Such an effort, by definition, may require some sacrifices by the debtor, and some alteration in the prepetition consumption levels. Thus, the debtor might reasonably be required to devote to the plan that portion of his income which is not necessary for the support of the debtor and his family.

*In re Johnson,* 241 B.R. 394, 398 (Bankr. E.D.Tex.1999), *quoting* S.Rep. No. 65, 98th Cong., 1st Sess. 22 (1983). The degree to which debtors must sacrifice in order to benefit from bankruptcy's equitable policy is governed by "[d]etermining what are reasonable and necessary expenses" which in turn "is an invitation for involvement of the Bankruptcy Courts in many difficult questions of lifestyle and philosophy." *Id., quoting* 5 Norton Bankruptcy Law & Practice 2d § 122:10 (1997).

▇▇ Contributions to a pension plan are forced savings from salary—indeed a powerful type of savings because of tax advantages and employer contributions. As a form of savings they cannot be categorized as funds that are "reasonably necessary" for a debtor's "maintenance or support."[4] *See* 11 U.S.C. § 1325(b)(2)(A). The money paid or contributed by the debtor is exclusively for the debtor's own benefit, and cannot be said to be "reasonably necessary for the maintenance or support of the debtor." *In re Cathleen M. Nation,* 236 B.R. 150, 152 (Bankr.S.D.N.Y. 1999). As United States Bankruptcy Judge Adlai S. Hardin ruled in *Nation,* the statutory scheme envisioned by bankruptcy law and the equitable features animating such proceedings would be severely frustrated by a policy that permits debtors to fill their own pension accounts while creditors receive only a fraction of their claims. *Id.*

The City argues that Ms. Taylor's pension contributions and loan repayments are mandatory under New York Law. N.Y. Retire. & Soc.Sec.Law §§ 600(b)(1), 604–c(d)(1)(i)(A), 604–c(d)(1)(i)(B), 613; N.Y.C.Admin.Code § 13–104. Ms. Taylor joined NYCERS on November 20, 1995, electing to participate in NYCERS' irrevocable Twenty Five–Year Early Retirement Program ("55/25 Plan"), N.Y. Retire. & Soc.Sec.Law § 604–c.[5] Ms. Taylor thus subscribed to a defined benefit plan. The plan required her to buy back missed contributions in order to avoid deficits in contributions that could affect her pension benefits. *In re Jaiyesimi,* 236 B.R. at 149. However, the City's contributions might not be affected, for these contributions are determined on an aggregate and actuarial basis, according to a formula taking into consideration future obligations to the aggregate of eligible employees, the income earned and expected to be earned by the assets in the plan, and the aggregate flow of contributions by City employees into the plan.[6] Thus, there may not be a direct

---

**4.** Although there is a certain degree of elasticity in determining what is "reasonably necessary ... for the maintenance or support of the debtor," provisions for savings are not properly included. *Cf. In re Tinneberg,* 59 B.R. 634, 635 (Bankr.E.D.N.Y.1986) (newspaper is not luxury item excludable from Chapter 13 plan); *In re Zaleski,* 216 B.R. 425, 432 (Bankr.D.N.D.1997) (striking from Chapter 13 plan monthly budgeting for daughter to attend private college).

**5.** Section 604c(d)(1)(i)(B) provides in pertinent part:
> each such participant shall contribute an additional two and eighty-five one hun-

dredths percent of his or her compensation earned from all credited service ... rendered on or after the commencement of the first payroll period which begins after January first nineteen hundred and ninety-eight....

N.Y. Retire. & Soc.Sec.Law § 604–c(d)(1)(i)(B) (McKinney Supp.1996). Withdrawal from the 55/25 Plan can be effected if initial election was made in error. N.Y. Retire. & Soc.Sec.Law § 604–c(B)(3)(ii)

**6.** Calculation of employer contributions is governed by N.Y.C.Admin.Code § 13–127 and includes contributions by the City and City-related entities.

correlation between a single employee's defaults in making contributions, and the City's over-all contribution obligations.[7] To the extent that a debtor's continued payment to the NYCERS plan would impair the contractual expectations of creditors, the effect of the City's argument is to prefer the City to other creditors.[8] Preferring one creditor to another is inconsistent with bankruptcy.

■ The effect of an employee's inability to make mandatory contributions is not treated in the statute. Although the City has the right to offset amounts owed the plan from salary and other benefits payable to the employee, *see In re Goewey*, 185 B.R. 444, 446–47 (Bkrtcy.N.D.N.Y. 1995), the right to offset cannot be allowed to interfere with a Chapter 13 Bankruptcy Plan. U.S. Const. Art. 1, § 8, cl. 4. Presumably, the City's right to offset, and Taylor's right and duty to buy back, must be deferred until after her three-year bankruptcy pay-out program will have been completed. N.Y. Const. Art. 5 § 7 ("membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired").

A recent decision, *In re Awuku*, 248 B.R. 21 (Bank.E.D.N.Y.2000), held that mandatory pension contributions to NYCERS should not be part of a Chapter 13 Plan because of the "materially adverse consequences" to the debtor and the pension plan. I do not agree with the decision. The bankruptcy court allowed its notion of "pragmatic jurisprudence"[9] to affect a proper reading of Title 11 of the Bankruptcy Code. Every Chapter 13 plan pinches debtors, and it seems grossly unfair to creditors that they should be prejudiced while a debtor's savings remain untouched. And, as here, there is no substance to the argument (at least none appears in the decision and none was shown in the case before me) that NYCERS will be damaged, or the debtor's job will be jeopardized if payments otherwise made to the debtor's retirement savings account are used to pay creditors. *Awuku* is unsound and I find it unpersuasive.

Thus, I hold that while payroll deductions may be considered mandatory in the sense that New York Retirement and Social Security Law and NYCERS regulations require deductions from a debtor's pay regardless of a debtor's wishes, such action may not be allowed to interfere with the creditors' "entitlement to receive all of the debtor's disposable income under Section 1325(b)(1)B." *Nation*, 236 B.R. at 154. What might be "mandatory" under ordinary provisions of state law may not "create a special, favored class of debtors (and their correspondingly disadvantaged creditors)" under federal bankruptcy law. An "employer-created 'mandatory' savings plan," may not be utilized to allow debtors to pay themselves rather than their creditors. *Id.*, at 154.

■ I am aware of *In re Colon Vazquez*, 111 B.R. 19 (Bankr.D.P.R.1990) and its holding that compulsory monthly payroll deductions are not to be considered "disposable income" but, rather, an expense

---

7. *See* NYCERS Rule 20.

8. *In re Davis*, 241 B.R. 704, 709 (Bank. D.Mont.1999), stated without factual or legal support, that a shortfall in a bankrupt's contributions to a pension plan might affect other beneficiaries to the plan. Whether or not that might be the case in Montana, no such showing has been made here. Nor does it seem to be the case with NYCERS. Buy back provisions exist for the debtor to make good for missed contributions; offsets from benefits are available to pay outstanding loans to beneficiaries and it would seem, a debtor who has not yet bought back missed contributions is probably not entitled to her share of the pension fund on retirement.

9. The bankruptcy court in *Awuku* was concerned "to give sufficient weight to the perspectives of the social sciences, especially modern welfare economics." *Id.*, at 25.

necessarily expended by the debtor in order to continue in a current employment, but I decline to follow this case. *Colon,* cited by Collier on Bankruptcy ¶ 1325.08[4][b][i] for the proposition that "expenses over which the debtor has no control or which are necessary to the debtor's employment are undoubtedly 'reasonably necessary,'" is distinguishable. Firstly, on the question of "control," there is no evidence that Ms. Taylor would suffer any adverse employment condition were she to cease making her payments.[10] *Cf. In re Tibbs,*[11] 242 B.R. 511, 518 (Bankr. N.D.Ala.1999). Secondly, bankruptcy courts are empowered to shield debtors from adverse employment actions such as termination, and there has been no showing that reasonable accommodation cannot be made by the City's plans. *Nation,* 236 B.R. at 153–54. Finally, *Colon* expressly deferred to the public policy of the Legislature and Commonwealth of Puerto Rico, 3 L.P.R.A. § 862 *et seq.,* and there has been no showing that the New York plan at issue here requires similar treatment.

### The Pension Loan Repayments

 Taylor's pension loan repayments is to be understood according to the same analysis as for pension contributions. A debtor's obligation to repay a retirement loan is not a debt dischargeable in bankruptcy. *In re Villarie,* 648 F.2d 810 (2d Cir.1981). Like contributions made to an ERISA-qualified account, pension loan repayments "may represent prudent financial planning, but [are] not necessary for the 'maintenance or support' of the debtors" and are therefore, treatable as dispos-

able income. *In re Harshbarger,* 66 F.3d 775 (6th Cir.1995). "Harshbarger distinguished between funds already in the ERISA-qualified account, including the money repaid prior to filing for bankruptcy," and money the debtor may wish to repay in the future. In the same way, Ms. Taylor's past loan repayments do not constitute disposable income while her future repayments do.[12]

The issue of loan repayments implicates the same policy considerations that govern pension contributions. Thus, as discussed more fully in the context of pension contributions, if loan repayments were not considered disposable income, courts would "convey a message to debtors contemplating bankruptcy that they may borrow against their retirement funds pre-petition and then insulate the repayment of those monies from their creditors post-petition." *In re Jones,* 138 B.R. 536, 539 (Bankr. S.D.Ohio 1991). Such a result runs counter to the intent of the Bankruptcy Code to provide repayment of indebtedness to creditors and to give debtors a fresh start.

### Conclusion

The decision of the Bankruptcy Court that the debtor's pension contributions and loan repayments are part of her disposable income pursuant to 11 U.S.C. § 1325(b) is affirmed. The Clerk shall dismiss the appeal and close the matter.

SO ORDERED.

10. The law applicable in *Colon* provides in part that employees from whose wages deductions are being made "may not dispose of the amounts discounted ... except in the event they definitely cease in their office or employment." 18 Laws of P.R.Ann. § 862(h).

11. Adverse consequences resulting from the inclusion of pension benefits in a Chapter 13 Plan as found in *Tibbs* have simply not been established in this case.

12. Corporation Counsel also argued that because pension payments may be treated as employer contributions and not employee income for tax purposes, (I.R.C. § 414(h)), this distinction should hold for what constitutes disposable income in the employee's Bankruptcy Plan. This argument is unavailing since the question to be determined is one of "reasonably necessity" under the Bankruptcy Code rather than the tax consequences to NYCERS.