**In re Timothy McGILBERRY, Debtor.**

**American Express Centurion Bank, Objectant,**

**v.**

**Timothy McGilberry, Defendant.**

**No. 1–02–05449.**

United States Bankruptcy Court, · M.D. Pennsylvania.

Sept. 5, 2003.

Craig J. Staudenmaier, Nauman, Smith, Shissler & Hall, Harrisburg, PA, Renee Lieux for American Express.

Dorothy L. Mott, Harrisburg, PA, Kara Messner, for Timothy McGilberry.

### *ORDER*

MARY D. FRANCE, Bankruptcy Judge.

Debtor filed the instant Petition on October 13, 2002. Objectant filed an Objection to Debtor's Plan on December 5, 2002 avering that Debtor has not dedicated all of his disposable income to Plan payments. More specifically, Objectant alleges that Debtor's schedules include several overstated or unnecessary expenditures which, if added back to his Plan payments, will significantly increase the percentage of repayment to unsecured creditors. Objectant holds two unsecured claims against Debtor, the total of which is $43,834.82, or approximately 41% of Debtor's total unsecured nonpriority debt.

A hearing was held on June 24, 2003, at which Debtor testified regarding his household, personal and business expenses. The parties were given thirty days to file briefs if they so desired. Only Objectant chose to do so. The matter is ready for decision.[1]

---

1. I have jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(G).

■ A creditor who files objections to the confirmation of a debtor's Plan of Reorganization bears the initial burden of producing evidence that the Plan does not pay unsecured claims in full and that it does not require the debtor to devote all of his disposable income to the Plan over its term. *In re Fricker*, 116 B.R. 431, 437 (Bankr.E.D.Pa.1990); *In re Fries*, 68 B.R. 676, 685 (Bankr.E.D.Pa.1986); *In re Navarro*, 83 B.R. 348, 355 (Bankr.E.D.Pa. 1988); *In re Crompton*, 73 B.R. 800, 808 (Bankr.E.D.Pa.1987). After the creditor satisfies this initial burden, the ultimate burden of proof shifts to the debtor. *Fricker*, at 437; *Crompton*, at 809; *Fries*, at 685.

In the instant case, the parties agree that the Plan will not pay 100% of all debt to unsecured creditors. To bear its burden of proof on the disposable income question, Objectant relies on Debtor's own testimony and schedules. Objectant argues that Debtor can live on less and should not be permitted to maintain his pre-petition lifestyle while in Chapter 13. Objectant's position finds a great deal of support from the case law, the legislative history and the bankruptcy commentators.

Chapter 13 relief is essentially equitable, and contemplates a substantial effort by the debtor to pay his debts. Such an effort, by definition, may require some sacrifices by the debtor, and some alteration in pre-petition consumption levels. Thus, the debtor might reasonably be required to devote to the plan that portion of his income which is not necessary for the support of the debtor and his family. *In re Johnson*, 241 B.R. 394, 398 (Bankr.E.D.Tex.1999), *quoting* S.Rep. No. 65, 98th Cong., 1st Sess. 22 (1983). The degree to which debtors must sacrifice in order to benefit from bankruptcy's equitable policy is governed by "[d]etermining what are reasonable and necessary expenses"

which in turn "is an invitation for involvement of the Bankruptcy Courts in many difficult questions of lifestyle and philosophy." *Id., quoting* 5 Norton Bankruptcy Law & Practice 2d § 122:10 (1997).

*In re Taylor*, 248 B.R. 37, 40 (S.D.N.Y. 2000).

Chapter 13 of the Bankruptcy Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors.... Chapter 13 debtors are not required to live as paupers; neither are they allowed to continue an extravagant lifestyle at the expense of creditors.... Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses.... Debtors are also allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses.... The Court lumps together all expenses projected by the debtor which are somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which constitutes disposable income.

*In re Zuehlke*, 298 B.R. 610, 2003 WL 21995167, 3 (Bankr.N.D.Iowa 2003) (citations omitted).

■ While none of the above-quoted sources provide a precise formula for calculating disposable income, all make it clear that modification of a debtor's lifestyle is often the price to be paid for the privilege of obtaining a Chapter 13 discharge. *Matter of Juzwiak*, 89 F.3d 424

(7th Cir.1996); *In re Robinson,* 506 F.2d 1184 (2nd Cir.1974) (privilege of discharge).

In the instant case, Debtor's testimony is sufficient to enable Objectant to bear its initial burden of proof. His testimony shows that he is making very little effort to moderate his pre-petition lifestyle in order to make some payment to his creditors. The tenor of his testimony was one of defiance, not sacrifice or even cooperation. For example, he testified that part of his schedule of expenses includes an allowance for replacing the deck on his home. Debtor cannot seriously argue that a new deck is a non-discretionary item. Yet, under cross-examination, he refused to concede that such an expense might be unnecessary under his current circumstances. Regardless, under *Taylor* and *Zuehlke,* it would not be unreasonable to require Debtor to forego a new deck while he attempts to repay a bit more of his debt.

In addition to his own testimony, Debtor's schedules also provide ample evidence of a lack of effort to reduce his consumption in order to repay credit card debt. Debtor's testimony is devoid of examples to demonstrate post-petition sacrifices for the sake of creditors. His schedules confirm that maintenance of his current lifestyle is his primary concern. For instance, Debtor plans to continue to incur substantial monthly expenses for *four* telephones—two cell phones, one business line and one home phone. His expenses for a separate business line are not justified when he is a full-time Commonwealth employee and has only a part-time accounting business that grosses him $447.00 per month. His stated reason for needing a cell phone—"because people need to con-

tact me"—is clearly too vague and banal to justify the expense.

In addition, Debtor testified that he resides in a house purchased in 1996 for $31,000.00. He incurred some $105,835.26 in unsecured debt over the ensuing years in which he made improvements that have brought his home to its current value of $145,000.00. If Debtor had purchased the house in its currently upgraded condition and obtained an equivalent mortgage, he could not do what he now seeks to do, which is discharge a substantial portion of that hypothetical mortgage.

Debtor testified that he chose to incur his credit card debt in order to pay ordinary household expenses when his non-debtor wife chose not to seek remunerative employment for a period of eleven years. His schedules show that all but $2,352.45 of his unsecured debt was incurred after he purchased his house, while his wife was unemployed. During this time, Debtor was consciously using credit as income, and to that extent, he chose to be in the situation in which he now finds himself.[2]

For these reasons, I find that there is a sufficient basis on which to deny confirmation of the Plan. Debtor will need to propose a new Plan which dedicates more income to unsecured creditors. Given the fact that Debtor has proposed two Plans so far and Objectant has objected to both of them on the same grounds, it is appropriate for me to provide some guidance to Debtor as to those expenditures that could be made more reasonable.

Debtor's wife is now employed. Debtor's net monthly income exceeds $5,800.00 and the net monthly income of his household exceeds $7,000.00. With so much income, Debtor can reduce his monthly ex-

**2.** The fact that Debtor is an accountant and is employed as a director within the Pennsylvania Department of Treasury makes it difficult to believe that he did not appreciate the extent to which his debt was growing.

penses without jeopardizing any of the reasonable needs of his family. His schedule of expenses includes a separate page entitled "Itemized Personal Expenses" which total $872.85. These expenses are mainly duplicates of those that are expected to be set forth in other categories on Schedule "J." For example, Schedule "J" provides a categorical expense allowance for "recreation, clubs and entertainment, newspapers, magazines, etc." Debtor allows $150.00 per month for this category. An expense of $150.00 is reasonable for a family of five whose primary breadwinner is in Chapter 13.[3] However, Debtor's "Itemized Personal Expenses" lists items that should be included in the $150.00 entertainment allowance, including cable television ($35.00), internet service provider ($24.00), and reading ($22.00). In addition, the "Itemized Personal Expenses" include amounts that are really not "itemized" at all, like "children's expenses" ($100.00) and "wife's expenses" ($388.00). When all basic needs such as food, clothing, shelter, transportation, medical care and church allowances already are amply provided for in Debtor's Schedule "J," it is difficult to conceive that these "itemized" categories for wife and children are truly expenses for anything other than their entertainment. Other remaining itemized expenses, "cell," lunches, "AAA" and toiletries are already included in the ample amounts that Debtor allows in Schedule "J" for telephone, food, and transportation. In short, a significant percentage of the $872.85 that Debtor allocates for "Personal Itemized Expenses" can and should be dedicated to the Plan.

For all of the above-discussed reasons, the Objection to Plan is hereby sustained.

Debtor shall have fifteen days in which to propose a new Plan, or his case shall be dismissed.

---

**3.** *See, e.g., In re Bottelberghe,* 253 B.R. 256, 264 (Bankr.D.Minn.2000) (entertainment costs of $68 a month for family of six); *In re Wood,* 92 B.R. 264, 266 (Bankr.S.D.Ohio 1988)($100 for entertainment for family of three held unreasonable); *In re Kitson,* 65 B.R. 615, 622 (Bankr.E.D.N.C.1986)($48 for health club membership, $20 for gymnastics class, $24 for newspapers, books, and periodicals held unreasonable for family of four).