**Robert Lee BUTLER, Debtor.**

No. 01–03843.

United States Bankruptcy Court, N.D. Iowa.

May 14, 2002.

John W. Ackerman, Waterloo, IA, for Debtor.

Michael C. Dunbar, Waterloo, IA, trustee.

## ORDER RE U.S. TRUSTEE'S MOTION TO DISMISS

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for trial on May 8, 2002 on the U.S. Trustee's Motion to Dismiss. Debtor appeared in person with Attorney John Ackerman. The U.S. Trustee's Office was represented by Assistant U.S. Trustee Janet Reasoner. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

The U.S. Trustee requests dismissal of this case based upon substantial abuse under § 707(b). Debtor's Schedule I shows a net income of $4,179. Debtor's Schedule J claims expenses of $4,310 per month. The U.S. Trustee asserts that Debtor has potential disposable income with which he could fund a Chapter 13 plan. He asserts that Debtor could make a meaningful payment to creditors with minor modifications in his lifestyle.

## FINDINGS OF FACT

Mr. Butler resides by himself in Waterloo, Iowa. He presented as exhibits a petition for divorce, as well as an unsigned copy of a stipulation captioned "Settlement Agreement". Mr. Butler was married to Annie Laura Butler. The dissolution petition was filed in the State of Georgia in January 2002. Mr. Butler asserts that the stipulation has been executed and that a divorce decree has been entered though that is not presented in this record. The stipulation provides that Mr. Butler would pay Annie Butler the sum of $700 per month beginning February 1, 2002 and continuing until either Mr. Butler or Mrs. Butler shall die. This item is a major expense in Debtor's Schedule J. However, the evidence that this is a court-ordered obligation is extremely sketchy.

Assuming that this obligation has been ordered and is being paid by Mr. Butler, he still retains a substantial amount of income. His income is based solely on disability payments. He receives monthly disability payments of $1,040 from Social Security, $2,200 from the Veteran's Administration, $419 from IPERS, and $520 from a Hartford Insurance disability policy. This totals $4,179 per month. He has been on disability since 1991. He periodically receives COLA raises but ordinarily there are increases in other costs, such as insurance premiums, which negates any increase in benefits.

Debtor received a 2001 refund of income tax from the State of Iowa in the amount of $220. He was required to pay $92 in Federal income tax.

The major controversy in this case surrounds Mr. Butler's expenses. He has no family expenses other than the $700 which, presumably, consists of court-ordered alimony to his ex-spouse. The remainder of the expenses must be examined in the context of the fact that Mr. Butler is disabled and has no work or travel obligations. He claims cable expense of $70 per month; telephone expense of $70 per month; and food bills of $500 per month. He claims $300 per month in clothing expenses and $200 per month in laundry and dry cleaning expense. He claims recreation expense of $150 per month and charitable contributions of $150 per month. In addition, under a separate category, he claims church tithing and offerings of $100 per month. He testified that all of his charitable and church contributions are in cash and, therefore, he has no records of such contributions.

A major expenditure is a 2001 Silverado truck which was purchased for approximately $34,000. He makes payments on this vehicle of $650 per month. He claims $250 per month expense for gasoline, as well as expenses for truck cleaning and waxing of $60 per month. Mr. Butler's testimony was vague as to why his gasoline expense was so high. While the testimony is not clear, Debtor appears to have little or no equity in this vehicle.

In addition, Mr. Butler claims $60 per month expense for dog food; $30 per month in birthday and anniversary gifts; and $40 per month in haircuts.

Mr. Butler's only secured debts relate to a $33,800 obligation to John Deere Com-

munity Credit Union which holds a lien on the Silverado truck. A second obligation in the approximate amount of $8,000 is owed to Leath Furniture and Conseco Finance for furniture. Mr. Butler has total unsecured claims of approximately $39,000.

### CONCLUSIONS OF LAW

■ Section 707(b) of the Bankruptcy Code provides the court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b). "Substantial abuse" is not a defined term. In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'" *In re Koch*, 109 F.3d 1285, 1288 (8th Cir.1997); *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989).

■ For § 707(b) purposes, ability to pay creditors is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding. *Koch*, 109 F.3d at 1288. Confirmation of a Chapter 13 plan requires, if an objection to confirmation is advanced, that the plan provide that all of the debtors' projected disposable income to be received during a three-year plan will be applied to plan payments. 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A). Evaluating Debtors' ability to fund a Chapter 13 plan necessitates a review of Debtor's disposable income.

■ This court has held that regular tax refunds should be taken into account in this analysis. *In re Nelson*, No. 97–03710S, slip op. at 5–6 (Bankr.N.D.Iowa March 16, 1998), *aff'd*, 223 B.R. 349 (8th Cir. BAP 1998). An analysis of projected disposable income necessarily considers the amount of the debtor's current income tax withholdings and whether any tax refund will be generated. *In re O'Brien*, 181 B.R. 71, 76 (Bankr.D.Ariz.1995).

■ Whether income is "reasonably necessary" for the debtors' maintenance and support is open to interpretation. *See In re Gleason*, 267 B.R. 630, 633 (Bankr. N.D.Iowa 2001) (considering requirements for Chapter 13 plan confirmation). In Chapter 13, the Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors. *In re Bottelberghe*, 253 B.R. 256, 263 (Bankr. D.Minn.2000). Chapter 13 debtors are not required to adopt a totally spartan existence; neither are they permitted to continue an extravagant lifestyle at the expense of creditors. *In re Webb*, 262 B.R. 685, 692 (Bankr.E.D.Tex.2001); *Bottelberghe*, 253 B.R. at 263. Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses. *In re Zaleski*, 216 B.R. 425, 431 (Bankr.D.N.D.1997). This section contemplates some sacrifices or alteration in prepetition consumption levels by debtors, while allowing them to sustain basic needs not related to their former lifestyles. *Webb*, 262 B.R. at 692; *In re Jones*, 55 B.R. 462, 467 (Bankr.D.Minn. 1985).

■ Some expenditures are clearly essential, or nondiscretionary, such as reasonable amounts budgeted for food, clothing and shelter. *In re Gonzales*, 157 B.R. 604, 608 (Bankr.E.D.Mich.1993). The Code, however, recognizes that debtors "cannot live by bread alone." *Id.* Chapter 13 debtors are allowed some latitude re-

garding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses, as evidenced in the form used for Schedule J—Current Expenditures. *Id.* Excessive amounts allocated to nondiscretionary expenses also constitute discretionary spending. *Webb,* 262 B.R. at 692; *Gonzales,* 157 B.R. at 608. The Court has the duty to examine the entire budget to determine whether all listed expenses are reasonable and necessary under § 1325(b). *Jones,* 55 B.R. at 467.

> No matter where the "fat" is hidden, such discretionary expenditures typically have more to do with enhancing one's quality of life, acquiring spiritual fulfillment, or just simply relaxing and enjoying oneself, than with subsistence. Since no two people have the same tastes, interests or philosophical dispositions, these discretionary costs can run the gamut from making charitable donations to buying a ticket for a tractor-pull event.[ ] By lumping all discretionary expenses together, whether they derive from categories more commonly thought of in subsistence terms or from categories commonly thought of as clearly discretionary in nature, the bankruptcy judge will often obviate the need to pass judgment on specific expenditures, that is to say, micromanage the details of a debtor's life.

*Gonzales,* 157 B.R. at 608.

■ The court in *Gonzales* devised a method to determine whether discretionary expenses budgeted by debtors are reasonable and necessary under § 1325(b), and several other courts have utilized this method. *Gonzales,* 157 B.R. at 609; *Webb,* 262 B.R. at 689; *In re Andrade,* 213 B.R. 765, 771 (Bankr.E.D.Cal.1997); *In re Devine,* 1998 WL 386380, at *6 (Bankr. E.D.Pa. July 7, 1998).

The proper methodology is to aggregate all expenses projected by the debtor which are somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."

*Gonzales,* 157 B.R. at 609.

This court examined expenses in *In re Nissly,* 266 B.R. 717, 718–19 (Bankr. N.D.Iowa 2001), in a similar manner. It determined a total of $370 per month for recreation, children's activities, internet costs, cable TV costs and gifts to family members was too high. Also, $1,960 for the debtors' mortgage and real estate taxes was excessive in light of the small amount of equity in the home. *Id.* Further, this court in *Gleason,* 267 B.R. at 634, adopted the *Gonzales* approach as it applies to confirmation of a Chapter 13 plan.

Discretionary expenses identified by courts include charitable contributions, gifts, recreation, private school tuition, payments for boats, campers and other luxuries, health club and country club dues, and newspapers and magazines. Courts also scrutinize cable TV services, veterinary expenses, cell phones, unspecified home repairs, and deductions for voluntary retirement funds. *See* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 165.1 (3d ed.2000); *In re Attanasio,* 218 B.R. 180, 201–10 (Bankr.N.D.Ala. 1998) (extensively collecting cases considering excessive or unreasonable expenses in the context of § 707(b) substantial abuse determination).

### ANALYSIS

■ Other than the court-ordered alimony obligation, Mr. Butler is not responsible for anyone other than himself. He

has $4,179 per month in stable income generated from disability payments. Deducting the alimony payment from this income leaves monthly income of almost $3,500. Based upon the legal principles previously set out, and applying those standards to Mr. Butler's lifestyle, it immediately becomes apparent that Mr. Butler has a substantial amount of monthly expenses which are within the category of "discretionary spending".

The Court has calculated Debtor's discretionary spending by lumping together all arguably discretionary expenses and excessive amounts of nondiscretionary line items. It is not necessary to list each item and it is sufficient to state that Mr. Butler does not deprive himself of any material needs. He has an expensive motor vehicle upon which he makes large payments. He spends a substantial amount of money each month on gasoline and cleaning of this vehicle. Eliminating this expensive vehicle and the associated expenses would alone generate close to $600 per month for creditors. Conservatively, this Court calculates that Mr. Butler has between $1,300 and $1,500 listed as expenditures each month which constitute discretionary spending and which should properly be paid to unsecured creditors. More than any other case which has been presented to this Court under § 707(b), the present case exemplifies spending on discretionary items which should be diverted to creditors. The Bankruptcy Code is not designed to allow Debtor to retain an extravagant lifestyle and discharge his obligations without modifying the lifestyle which created the financial problem.

It is the conclusion of this Court that no purpose would be served by analyzing and scrutinizing the various discretionary expense items at great length. Suffice it to state that Mr. Butler is living a comfortable lifestyle to a large extent at the expense of his unsecured creditors. If Mr. Butler were to modify his spending choices to even a reasonable degree, he would be capable of paying two-thirds to three-quarters of his unsecured creditors without hardship.

This Court concludes that, under the evidence presented, granting Debtor a Chapter 7 discharge in this case would be a substantial abuse of the bankruptcy process. Debtor has a substantial and comfortable income. His expenses are, to a large degree, discretionary and excessive. Debtor has a substantial ability to pay creditors and granting him Chapter 7 relief would constitute a substantial abuse of the Bankruptcy Code.

**WHEREFORE,** the U.S. Trustee's Motion to Dismiss is SUSTAINED.

**FURTHER,** Debtor shall have until 4:30 p.m. on May 29, 2002 within which to elect to file a Motion to Convert to Chapter 13.

**FURTHER,** if Debtor elects not to convert to Chapter 13 by said date, this case will be dismissed for substantial abuse without further notice or hearing.