**Chuck Lewis DOWNIN and Marie Louise Downin, Debtors.**

No. 02–01379–C.

United States Bankruptcy Court, N.D. Iowa.

Oct. 7, 2002.

Todd P. Forsythe, Cedar Rapids, IA, for Debtors.

## ORDER RE U.S. TRUSTEE'S MOTION TO DISMISS

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for trial on September 24, 2002 on U.S. Trustee's Motion to Dismiss. Debtors appeared in person with Attorney Todd P. Forsythe. The U.S. Trustee's Office was represented by Attorney John Schmillen. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

The U.S. Trustee requests dismissal of this case based upon substantial abuse under § 707(b). He asserts Debtors have large tax refunds which should be included as disposable income. Also, they have discretionary spending which could be devoted to payments under a Chapter 13 plan. Debtors assert their budget is pared down to essentials and they have no money with which to fund a plan. In the alternative, Debtors request the opportunity to convert to Chapter 13 if the Motion to Dismiss is granted.

## FINDINGS OF FACT

Mr. Downin works as a mechanic for a construction company. His monthly gross income, including estimated overtime, is $5,286. Mrs. Downin is head of housekeeping for a local motel. Her monthly gross income is $1,541. Debtors' total income in 2001 was $67,371. Mr. Downin testified he believes his income will be approximately 10% less in 2002. For the 2001 tax year, Debtors received a federal tax refund of $3,380 and a state refund of $105.

Mr. Downin contributes $346.66 per month to his 401(k) plan. This is 10% of his gross regular income. He has made similar contributions for 14 years and this represents his only retirement program. Mr. Downin testified he believed he could reduce his contribution to perhaps 6% without penalty.

Concerning Debtors' amended Schedule J, Mr. Downin testified that $40 for cable is the cost for their high-speed internet service. This avoids the need for an additional phone line. Satellite TV for $65 includes an extra movie channel. Their mobile home lot agreement forbids external TV antennas. Cell phone expenses of $75 and $50 are for Mr. Downin's use for work needs and Mrs. Downin's use for emergencies. Debtors list expenses for clothing of $125 and work clothes of $100. Mr. Downin testified their jobs do not provide uniforms. Some of his work is outdoors which requires heavy, insulated clothes in the winter.

Mr. Downin testified that $100 for laundry and dry cleaning is for expenses at home from the need to wash work clothes separately from other clothes. They have few dry cleaning needs. Debtors anticipate approximately $1,000 in upcoming expenses for home maintenance and repair, including replacing floors harmed by water damage, sealing the roof, cleaning and inspecting the furnace, powerwashing siding, repainting the deck and steps, replacing waterline insulation, etc. Debtors list $100 for lawn care expense, which includes weekly mowing and winter snow removal. Both Debtors and their 8–year–old daughter have recently needed dental work.

Debtors project recreation expenses of $125 per month. Mr. Downin testified that he is paying $215 per month on a secured debt for tools and anticipates a similar monthly expense in the future as he continues to need tools for his job. Debtors have been paying $245 per month on a ski boat which they intend to surrender. Debtors are paying $858 per month

for loans on their two vehicles, a 98 Dodge Ram and a 98 Blazer. They also list transportation expenses of $200, vehicle maintenance of $125, and vehicle registration of $30. Upcoming vehicle expenses include new tires and replacing a shift knob on their 98 Dodge Ram.

Debtors assert they have no money left after paying their monthly expenses. Although there is room for some belt tightening, Debtors question whether there is enough disposable income to fund a Chapter 13 plan.

U.S. Trustee asserts that, with lifestyle changes, Debtors could pay 50% of their unsecured claims over a 3–year Chapter 13 plan. He focuses on Debtors' tax refunds, the possibility of reducing car payments, reducing 401(k) contributions, and discretionary spending for recreation, gifts, school, internet and TV expenses, which could be reduced to more reasonable levels considering Debtors are seeking bankruptcy protection. U.S. Trustee asserts that, with modest lifestyle adjustments, budgeting and planning, Debtors could fund a Chapter 13 plan.

## CONCLUSIONS OF LAW

■ Section 707(b) of the Bankruptcy Code provides the Court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7. *In re Taylor,* 212 F.3d 395, 396 (8th Cir.2000); 11 U.S.C. § 707(b). "Substantial abuse" is not a defined term. In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'" *In re Koch,* 109 F.3d 1285, 1288 (8th Cir.1997).

■ For § 707(b) purposes, ability to pay creditors is measured by evaluating

Debtors' financial condition in a hypothetical Chapter 13 proceeding. *Koch,* 109 F.3d at 1288. Confirmation of a Chapter 13 plan requires, if an objection to confirmation is advanced, that the plan provide that all of the debtors' projected disposable income to be received during a three-year plan will be applied to plan payments. 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A). Evaluating Debtors' ability to fund a Chapter 13 plan necessitates a review of Debtor's disposable income. *See generally, In re Butler,* 277 B.R. 917, 920–21 (Bankr.N.D.Iowa 2002). This court has held that regular tax refunds should be taken into account in this analysis. *Id.* at 920.

■ The Bankruptcy Code requires a *meaningful and realistic budget,* accompanied by the devotion of most of the debtor's surplus income to repay creditors. *In re Bottelberghe,* 253 B.R. 256, 263 (Bankr.D.Minn.2000). Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses. *In re Zaleski,* 216 B.R. 425, 431 (Bankr.D.N.D.1997). Some expenditures are clearly essential, or non-discretionary, such as reasonable amounts budgeted for food, clothing and shelter. *In re Gonzales,* 157 B.R. 604, 608 (Bankr. E.D.Mich.1993). Debtors are also allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses. *Id.*

The proper methodology is to aggregate all expenses projected by the debtor which are somewhat more discretionary

in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."

*Gonzales,* 157 B.R. at 609. This court has adopted the *Gonzales* approach in making disposable income determinations. *See Butler,* 277 B.R. at 921.

### ANALYSIS

■ According to Debtors' amended Schedules I and J, they have income of $4,175 and expenses of $4,436, which leaves them short by $261 per month. The Court estimates 2002 tax refunds will be 10% less than the 2001 refunds, or approximately $3,136. This constitutes monthly overwithholding of taxes of $261, which would allow Debtors to break even every month based on the expenses budgeted in amended Schedule J.

Pursuant to the foregoing, however, Debtors' budget includes discretionary spending which could fund a Chapter 13 plan. This includes discretionary expenses in the categories of cable internet, cell phones, satellite TV, clothing and work clothes, recreation, home maintenance, tools, and miscellaneous categories such as cosmetics, gifts, lawn care, school expenses, etc. These total approximately $1,200 per month. If Debtors reduced this discretionary spending by one-third, for example, approximately $400 per month would be available to creditors.

Furthermore, nondiscretionary expenses for food, laundry and dry cleaning, and transportation (plus vehicle maintenance and registration) appear to include some excessive amounts. By scaling back these expenses by only 15%, for example, Debtors could general disposable income available to creditors of approximately $140. U.S. Trustee also points out that Debtors could modify secured claims in a Chapter 13 plan and reduce the amount of payments on their vehicles and tools to provide the creditors the value of the collateral. He estimates this could free up another $175 per month. Furthermore, reducing the 401(k) contribution to 6% of Mr. Downin's regular income would generate an additional $140 per month, minus associated payroll taxes.

U.S. Trustee suggests that Debtors' disposable income could pay unsecured creditors 50% of their claims over three years in a Chapter 13 plan, through a payment of approximately $500 per month. The Court concurs, based in its calculations of discretionary spending which supports a finding that, by reducing expenses, Debtors could contribute up to $800 per month. As such, granting Debtors Chapter 7 relief would constitute substantial abuse of the provisions of the Bankruptcy Code.

**WHEREFORE,** the U.S. Trustee's Motion to Dismiss is GRANTED.

**FURTHER,** Debtor shall have until 4:30 p.m. on October 21, 2002 within which to elect to file a Motion to Convert to Chapter 13.

**FURTHER,** if Debtor elects not to convert to Chapter 13 by said date, this case will be dismissed for substantial abuse without further notice or hearing.