In re Ronald W. ZUEHLKE, Sharon K. Zuehlke, Debtors.

No. 03–101398.

United States Bankruptcy Court, N.D. Iowa.

Aug. 13, 2003.

Ivan J. Ackerman, Waverly, IA, for Debtors.

## ORDER RE U.S. TRUSTEE'S MOTION TO DISMISS

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for hearing on July 23, 2003 on U.S. Trustee's Motion to Dismiss. Debtors Ronald and Sharon Zuehlke appeared in person with Attorney John Ackerman. Attorney John Schmillen represented U.S. Trustee. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has passed, and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

U.S. Trustee requests dismissal of this case based upon substantial abuse under § 707(b). Debtors' Schedule I shows net monthly household income of $3,887. Debtors' original Schedule J lists expenses of $3,235 per month. Their subsequent amended Schedule J lists expenses of $3,887 per month. U.S. Trustee alleges that Debtors have significant disposable income with which to fund a Chapter 13 plan.

## FINDINGS OF FACT

Debtors Ronald and Sharon Zuehlke filed their joint Chapter 7 petition on April 14, 2003. Schedule I lists their current monthly income as $3,887. Debtors claimed 2002 tax refunds of $742 from the IRS and $164 from the State of Iowa. In oral testimony, Mrs. Zuehlke stated that Debtors do not anticipate any changes to their withholdings.

Debtors list current monthly expenses of $3,235 on their original Schedule J, filed April 14, 2003. The Amended Schedule J Debtors filed on May 12, 2003 shows total monthly expenses of $3,887. The most conspicuous change to Schedule J is in "Other" expenses, which Debtors increased from $100 to $805. Debtors cite "Household, clothing, vehicle maintenance expenses, etc." to explain the amount. Amended Schedule J already lists monthly expenditures for "Home maintenance" at $110, "Clothing" at $100 and "Transportation" at $250.

Mr. Zuehlke is fifty-three years old. He suffered a mental breakdown during college in 1971 and another during a dissolution of marriage in the late 1980s. He has been diagnosed with recurrent depression and slight schizophrenia. Mr. Zuehlke receives disability benefits of $1,575 per month from a Thrivent Financial insurance policy, and $1,194 per month from Social Security. He is employed, working less than 20 hours per week for Target Corporation as a stock person. His net income from Target is about $600 per month. Mr. Zuehlke testified he expects to lose health coverage through Target Corp. in August 2004. He underwent surgery in April 2003 to remove a malignant melanoma from his arm. He did not require radiation or chemotherapy treatments. There is no testimony indicating this illness will have long term effects or cause extraordinary expenses.

Mrs. Zuehlke is fifty-six years old. At age thirty, she suffered a stroke that paralyzed her left side. She receives $518 per month in Social Security disability benefits. She does not work. She manages Debtors' finances.

Debtors pay approximately $234 each month for ongoing prescription medications. Debtors testified that their medical insurance also requires them to pay a portion of the cost of their medical care. Debtors listed $300 on Schedule J for monthly "Medical and dental expenses."

Schedule D shows debt secured by Debtors' home and by their vehicles, a 1994 Toyota pickup and a 1998 Toyota Camry. Debtors intend to reaffirm all secured debts. They list no Schedule E unsecured priority debt. The $60,012.66 total of unsecured nonpriority claims from Debtors' Schedule F consists entirely of credit card and retail store charge accounts.

At the July 23, 2003 hearing on U.S. Trustee's Motion to Dismiss, U.S. Trustee showed that Mrs. Zuehlke's listing of Debtors' February 2003 expenditures totals $4,449. Of this amount, $1,583 was attributable to payments on pre-petition unsecured debts. Mrs. Zuehlke testified to six additional monthly items: $250 for vehicle maintenance, $35 for water, sewer and garbage, $100 for additional gasoline, $200 for clothing, $150 for recreation, and $100 in pet-related expenses for Debtors' two cats. Based on these calculations, Debtors have total expenses of $2,867 per month. Debtors' $3,887 monthly disability income and earnings at Target, plus $75 per month federal and state tax over-withholdings, generate $3,962 of net monthly income. Using these figures, U.S. Trustee concluded that Debtors have disposable income in excess of $1,000 per month.

Debtors resist U.S. Trustee's Motion to Dismiss, claiming that amounts spent in February 2003 do not accurately reflect their actual current expenses. Debtors assert that U.S. Trustee overstates their monthly disposable income. They do not challenge the total amount of their net income. But, Debtors rely heavily on their amended Schedule J as establishing that their expenses match their income. In this amended schedule, they list a general category which they define as "Household, clothing, vehicle maintenance, etc." in the amount of $805 per month. The schedule provides no further specifics on these expenditures nor did Debtors' testimony. All of these categories are already listed and claimed in some amount on Schedule J. Eliminating this one non-specific category from Debtors' current Schedule J reduces expenses to $3,082 per month. Based on Debtors' undisputed income, this allows $880 in disposable income per month to fund a plan.

## CONCLUSIONS OF LAW

 Section 707(b) of the Bankruptcy Code provides that the court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts, if it finds that granting relief would be a substantial abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b) (1998). The Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8) (2000). "Debts incurred to purchase ... a home are consumer debts." *In re Palmer*, 117 B.R. 443, 447 (Bankr.N.D.Iowa 1990). Debts for vehicles purchased for personal use are consumer debts. *In re Traub*, 140 B.R. 286, 289 (Bankr.D.N.M.1992).

 Section 707(b) creates a strong presumption that a debtor is entitled to relief under Chapter 7. 11 U.S.C. § 707(b). The presumption is not conclusive, and

"may be rebutted by the facts themselves." *In re Kress,* 57 B.R. 874, 878 (Bankr. D.N.D.1985). A finding that a debtor has substantial disposable income can overcome this presumption. *Id.* at 878. In a § 707(b) motion to dismiss case, the burden rests on the moving party. *In re Smith,* 269 B.R. 686, 689 (Bankr.W.D.Mo. 2001).

Congress did not define "substantial abuse" as used in § 707(b). In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'" *In re Koch,* 109 F.3d 1285, 1286 (8th Cir.1997) (*quoting In re Walton,* 866 F.2d 981, 984–85 (8th Cir. 1989)). For § 707(b) purposes, courts measure debtors' ability to pay creditors by evaluating their financial condition in a hypothetical Chapter 13 proceeding. *Koch,* 109 F.3d at 1290. In order to overcome an objection to confirmation, a Chapter 13 plan must either pay claims in full or provide that all of a debtor's projected disposable income over three years will be applied to plan payments. 11 U.S.C. § 1325(b)(1)(B) (1998).

Chapter 13 defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 1325(b)(2). Disposable income includes disability payments and insurance policy proceeds. *Koch,* 109 F.3d at 1288–89. Income tax refunds and consistent over-withholdings should also be included in debtors' Chapter 13 income. *In re Harger,* 267 B.R. 848, 851 (Bankr.N.D.Iowa 2001). An analysis of projected disposable income necessarily considers the amount of the debtor's current income tax withholdings and whether any tax refund will be gener-

ated. *In re Butler,* 277 B.R. 917, 920 (Bankr.N.D.Iowa 2002).

Chapter 13 of the Bankruptcy Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors. *In re Beckel,* 268 B.R. 179, 183 (Bankr.N.D.Iowa 2001). Chapter 13 debtors are not required to live as paupers; neither are they allowed to continue an extravagant lifestyle at the expense of creditors. *Butler,* 277 B.R. at 920. Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses. *In re Eiklenborg,* 286 B.R. 718, 722 (Bankr.N.D.Iowa 2002).

Some expenditures are clearly essential, or nondiscretionary, such as reasonable amounts budgeted for food, clothing and shelter. *In re Downin,* 284 B.R. 909, 912 (Bankr.N.D.Iowa 2002). Debtors are also allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses. *Id.* The Court lumps together all expenses projected by the debtor which are somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which constitutes disposable income. *Id.* at 912–13.

## ANALYSIS

Debtors are sympathetic individuals who have had substantial misfortune in their lives. Fortunately for them, however, they receive disability income and limited work income. Debtors listed monthly expenses of approximately $3,200 in their original Schedule J, filed with their peti-

tion in April of 2003. In response to U.S. Trustee's § 707(b) motion, Debtors filed their Amended Schedule J which increases their expenses to a level exactly the same as their declared monthly income of $3,887. Debtors include in this amended Schedule J a category of expenses which is completely unsupported by the evidentiary record. As previously stated in this opinion, this category is listed under "Other" and is defined as "Household, Clothing, Vehicle maintenance expenses, etc." These are categories which are already included in Schedule J. No serious attempt was made to establish the relationship between these purported expenses and the previously listed expenses which were already declared.

██ U.S. Trustee analyzed this case from various perspectives. The burden is upon U.S. Trustee to show that Debtors are in a position to contribute substantial disposable income toward their existing debt. U.S. Trustee is not required to establish a precise mathematical figure.

██ U.S. Trustee first examined this case in light of the schedules which were presented at the time of the filing of this case. At that time, Debtors declared income of $3,887. In addition, based upon state and federal tax refunds, Debtors have an additional $75 per month to add as income. Therefore, Debtors have $3,962 per month in stable income. These numbers are unchallenged by Debtors. Debtors' only challenge is to the proper amount of expenses. Based upon Schedule J submitted at the time of filing, Debtor's monthly expenses were $3,235. These numbers reflect disposable income of $727 per month.

U.S. Trustee also analyzed Debtors' disposable income in light of the portion of Debtors' monthly payments in February which were in effect payments on unsecured debt and which would be included in a Chapter 13 plan. Under such an analysis, Debtors have disposable income somewhat in excess of $1,000 per month.

Finally, U.S. Trustee looked at the amended Schedule J in terms of the final category of "Other". Debtors have attempted to lump into one major category $800 worth of expenses per month. They have done so with a complete lack of substantiation to justify this lump sum. That category is discretionary spending which should be included as disposable income. Under this analysis, Debtors have in excess of $800 in disposable income to contribute toward a wage-earner plan.

Despite undeniable misfortune and hardship in their lives, Debtors have a stable income of more than $47,000 per year. Also despite their misfortune, Debtors have no extraordinary expenses which consume a substantial amount of that income. Debtors testified that they may lose health insurance at the end of 2004. This is a cost which would be more appropriately addressed in modification of a Chapter 13 plan, rather than the present analysis of disposable income as it relates to the &sect;707(b) motion. At the present time, a careful examination of Debtors' expense schedules does not reflect any catastrophic or even unusually large expenses.

Under all of U.S. Trustee's analyses of disposable income in this case, Debtors have disposable income of between $700 and $1000 per month. While these numbers do vary to some degree, they all establish that Debtors have more than a minimal amount of disposable income with which to fund a Chapter 13 plan. Debtors have unsecured debt of slightly in excess of $60,000. Based upon U.S. Trustee's calculations of disposable income, Debtors are able to fund a Chapter 13 plan which could pay as a minimum one-fourth of all their unsecured debt and possibly, with

some financial control, an amount substantially in excess of that figure.

This Court must conclude that U.S. Trustee has overcome the 707(b) presumption in favor of granting the relief requested by Debtors. Debtors are capable of funding a Chapter 13 wage-earner plan. Granting Debtors a Chapter 7 discharge on this factual record would constitute substantial abuse of the provisions of Chapter 7 of the Code.

**WHEREFORE,** U.S. Trustee's Motion to Dismiss is GRANTED.

**FURTHER,** Debtors shall have fourteen days from the date of this order to elect to file a Motion to Convert to Chapter 13.

**FURTHER,** if Debtors do not elect to convert to Chapter 13 by said date, this case will be dismissed based upon substantial abuse without further notice or hearing.