**In re Joseph R. SOHN, Debtor.**

No. 03–33976.

United States Bankruptcy Court,
D. Minnesota.

Oct. 22, 2003.

Stephen J. Behm, Eskens Gibson & Behm Law Firm, Mankato, MN, for Debtor.

## ORDER DENYING CONFIRMATION

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the Chapter 13 Trustee's objection to confirmation of the Debtor's proposed Chapter 13 plan. Patti J. Sullivan appeared on behalf of the Chapter 13 Trustee, Michael J. Farrell. Stephen J. Behm appeared on behalf of the Debtor, Joseph R. Sohn. At the conclusion of the hearing, the Court provided the Trustee ten days in which to file a complete brief. The Court thereafter took the matter under advisement. Based upon all the files, records and proceedings herein, the Court being now fully advised in the premises, makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I. Factual Findings

The facts in this matter are not disputed. Joseph Sohn filed the petition commencing this Chapter 13 case on June 3, 2003. Sohn's bankruptcy schedules indicate unsecured nonpriority debt of $21,366.20, plus secured debt of $170,458.91 relating to his homestead. His personal property schedule includes a tax refund identified as "6/12's of 2003 anticipated refunds of $4.500." The anticipated tax refund is also listed on the schedule of property claimed exempt. Funds saved in a checking account in the amount of $2,000 are also claimed exempt.

Sohn's total monthly income is $2366.66 per month, including wages, public assistance, rental income, and exempt savings in a checking account. No portion of the anticipated $4,500 tax refund claimed ex-

empt is included in the calculation of Sohn's income. His monthly total expenses are $1816.66, leaving an apparent monthly surplus of $550. The expenses as scheduled have raised no objections, and are quite modest but appear complete and realistic.[1] Sohn's plan proposes to pay $550 per month for 44 months, dispersed as follows: $11,550 to cure the homestead mortgage default; $1,282.60 in trustee fees; and $11,367.40, approximately a 47% dividend on $21,366.20 total unsecured debt, to unsecured creditors.

The Trustee objected to confirmation of the Debtor's proposed plan for its failure to provide either full payment of unsecured claims or devotion of all of the debtor's projected disposable income over the term of the plan. Specifically, the Trustee objected pursuant to 11 U.S.C. §§ 1325(b)(1) and (b)(2) for Sohn's failure to include his income tax refunds as listed in Schedules B and C in the calculation of his projected disposable income. The Trustee's position is that even if a tax refund is exempt, it must nevertheless be included in formulation of a debtor's disposable income in Chapter 13.

The Debtor argues that in this case the funds do not truly constitute a tax refund, are not derived from excess income withheld, and are in the nature of income supplements or credits[2] designed specifically for the necessary maintenance and support of the debtor and his dependents. Sohn claims that the inherent nature of such credits is of supplemental support, in essence a legislative declaration that such credits are reasonable and necessary for purposes of sustaining the recipient's exis-

tence and to alleviate the financial burdens of raising children. Sohn contends that the character of these particular credits therefore militates against those funds being used to pay creditors in a Chapter 13 plan.

## II. Discussion

■ Section 1325(b) provides, in pertinent part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor, including ...

*See* 11 U.S.C. § 1325(b).

According to the plain language of § 1325(b) and the less than 100% payment of claims proposed by the plan in this case,

---

1. Sohn reported a monthly food expense for himself and his two teenage sons of only $50, but noted that he receives food stamps, though in what dollar amount he did not indicate.

2. Specifically, Sohn claims that all or most of his refund, which does come in the typical form of an annually computed tax refund, is actually composed of certain credits, or income supplements, including the Earned Income Credit, the Minnesota Child Dependency Credit, and the Minnesota K–12 Credit.

Sohn must contribute all of his disposable income into the plan. The only issue then, is whether the funds represented by Sohn's portion of the exempt tax refund attributable to state supplemental income and credits legislation[3] must be included in calculation of his disposable income.

Contrary to Sohn's protestations, this issue has been squarely addressed and decided by the Eighth Circuit Court of Appeals. In *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1288 n. 3 (8th Cir.1997), the Court framed the issue, albeit in the context of an 11 U.S.C. § 707(b) substantial abuse inquiry, as "whether income received from exempt sources during the ... life of a ... Chapter 13 plan is 'disposable income'" for purposes of § 1325(b)(1)(B). The Court noted the difference between exempt pre-petition assets, such as a homestead, which in Chapter 13 "retain whatever exempt status they have," and income received from exempt sources during the life of the plan. *Id.*

■ The Court explained that the benefit of Chapter 13 (as opposed to Chapter 7) is that it "gives 'an individual with regular income' the opportunity to preserve pre-petition assets through a three- to five-year plan funded primarily with that income." *Koch*, 109 F.3d at 1288, citing 11 U.S.C. § 109(e). Prior to the 1984 amendments to the Bankruptcy Code, courts "consistently held that revenues from exempt sources, such as disability and social security benefits, are 'income,' that *may* be used to fund a Chapter 13 plan," ensuring that "social welfare recipients [are not] denied the benefits of Chapter 13" relief. *Id.* (emphasis added). With the addition of § 1325(b)(1)(B) to the Code in 1984, however, "exempt income not reasonably needed for support then [became] 'disposa-

ble income' that *must* be paid to creditors." *Id.* at 1289. This holding is now well settled in this Circuit. *See Taylor v. United States (In re Taylor)*, 212 F.3d 395, 397 (8th Cir.2000); *In re Zuehlke*, 298 B.R. 610, 614 (Bankr.N.D.Iowa 2003); *In re Makinen*, 239 B.R. 532, 535 (Bankr. D.Minn.1999); *In re Bicsak*, 207 B.R. 657, 661 (Bankr.W.D.Mo.1997).

The Court explained that "despite this additional implication, courts since 1984 have continued to hold that revenues received from exempt sources during the life of a Chapter 13 plan are 'income,' the disposable portion of which must be paid to unsecured creditors if the plan is to be confirmed." *Id.*, citing *In re Freeman*, 86 F.3d 478, 480–81 (6th Cir.1996) (tax refunds); *In re Hagel*, 184 B.R. 793, 796–97 (9th Cir. BAP 1995) (social security benefits); *In re Minor*, 177 B.R. 576, 579 (Bankr.E.D.Tenn.1995) (worker's compensation benefits); *Watters v. McRoberts*, 167 B.R. 146, 147 (S.D.Ill.1994) (personal injury recovery); *In re Schnabel*, 153 B.R. 809, 815–16 (Bankr.N.D.Ill.1993) (social security and pension benefits); *In re Sassower*, 76 B.R. 957, 960 (Bankr.S.D.N.Y. 1987) (pension, welfare, and unemployment benefits).

■ The language used by the Court of Appeals in the *Koch* decision is unequivocal and makes no exception. "Chapter 13 contains no language suggesting that exempt post-petition revenues are not Chapter 13 'income,' and § 1325(b)(2) expressly defines 'disposable income' to mean income not needed for debtor's support." *Koch*, 109 F.3d at 1289. In other words, Chapter 13 has within its provisions a distinct test for determining allocation of the debtor's incoming revenue necessary for plan con-

---

**3.** The Debtor concedes that a regular tax refund, that is one derived as a result of the usual excess withholding from earned wages, constitutes income for purposes of the Chapter 13 disposable income calculation and regardless of its exempt status.

firmability. The disposable income test is the exclusive means by which, in Chapter 13, the debtor's necessary and reasonable living expenses are determined, and excess income available beyond those allowed expenses constitutes disposable income within the meaning of § 1325(b) and must be contributed to the plan, regardless of whether it is exempt.

The quality of a revenue source being exempt is not probative in the disposable income context: "Exemptions are less significant in protecting Chapter 13 debtors." *Id.* "In a Chapter 7 liquidation, exemptions ensure 'that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge.'" *Id.*, citing *Schnabel*, 153 B.R. at 817, quoting H.R.Rep. No. 95–595, 1978 U.S.C.C.A.N. at 6087. "In a Chapter 13 proceeding, on the other hand, debtor repays unsecured creditors primarily with post-petition 'disposable income,' income that is not reasonably necessary for support." *Koch*, 109 F.3d at 1289. Of paramount significance is the crucial fact that, in Chapter 13, the "[d]ebtor's fresh start is not endangered by a requirement that income received during the life of the plan from otherwise exempt sources be included in the calculation of disposable income." *Id.*

Sohn's reliance on the Eighth Circuit's decision in *Berger v. Pokela (In re Berger)*, 61 F.3d 624 (8th Cir.1995) is misplaced. The *Berger* case, a case under Chapter 12, involved the debtors' equity in a tractor that had been purchased with exempt life insurance proceeds received by the debtors during the life of the plan. *Id.* The Court held that the debtor's equity in the tractor did not constitute disposable income under 11 U.S.C. § 1225(b)(1)(B). *Id.* at 627. Aside from being distinguishable because it involved the equity in an asset purchased with exempt proceeds as op-

posed to a forthcoming source of otherwise exempt revenue, *Berger* is moreover not on point because it did not address the question of whether exempt income is a necessary part of the disposable income analysis. The Eighth Circuit held in *Koch* that "*Berger* is not controlling." *Koch*, 109 F.3d at 1289.

First, the Court pointed out that its decision in *Berger* was based on the unappealed conclusion by the bankruptcy court "that life insurance proceeds received during the life of a Chapter 12 plan were not 'income' under Chapter 12." *Id.* The Court moreover noted that the bankruptcy court's unappealed conclusion that the exempt proceeds did not constitute income was a premise in conflict with other Eighth Circuit decisions. *Id.*, n. 4, citing *In re Martin*, 130 B.R. 951, 966 (Bankr. N.D.Iowa 1991), followed in *Agribank, FCB v. Honey*, 167 B.R. 540, 544 (W.D.Mo. 1994). Second, the Court noted the essential distinguishing fact, that "*Berger* did not consider the critical issue in this case—whether exempt revenues are 'income' under Chapter 12 or Chapter 13." *Koch*, 109 F.3d at 1289.

The Court in *Koch* also went on to discuss and reject the argument that "treating exempt income as Chapter 13 disposable income violates the mandate in § 522(c) that exempt property 'is not liable' for any pre-petition debt." *Id.* "Including exempt income in disposable income does not make exempt property 'liable' to Chapter 13 unsecured creditors." *Id.* "Chapter 13 relief is at the option of the debtor." *Id.*, citing § 1307(a), (b). "Chapter 13 relief remains wholly voluntary." *Koch*, 109 F.3d at 1290. "The disposable income limitation in § 1325(b) simply defines the terms upon which Congress has made the benefits of Chapter 13 available." *Koch*, 109 F.3d at 1289.

Sohn makes the argument that while the distribution of the supplemental income payments he expects to collect through the Earned Income Credit, Minnesota Working Family, Minnesota Child Dependency Credit, and the Minnesota K–12 Credit programs are issued to him in the form of an income tax refund, it is not truly a tax credit or refund. Sohn points out that there is no requirement that taxes be paid in order to be eligible for those programs, that the credits were designed to provide relief to low-income families, and that they were enacted as an incentive to work rather than receive public assistance. He argues that the programs are, in effect, legislative declarations of the reasonableness and necessity of the payments for his and his dependents' sustenance.

Even accepting all of this as true, those elements and qualities do not appear to have a role in the determination of disposable income in the Chapter 13 context.[4] There is no authority by which to allocate more significance to certain sources of revenue collected during the life of the plan over others, no super-exempt quality to label such supplemental income program payments. According to the Eighth Circuit in *Koch*, any kind of post-petition income, exempt or not, is nevertheless income for purposes of calculating therefrom how much of it is disposable and must fund the plan: "[E]xempt income not reasonably needed for support then [became] 'disposable income' that *must* be paid to creditors." *Id.* Only the reasonable and necessary expenses required in order to maintain a basic-needs lifestyle are allowed when the relief of Chapter 13 is granted,

and therefore what income remains after that must be deemed disposable.

Indeed, Sohn included in his scheduled calculation of disposable income other sources of exempt or supplemental support income, and without the need for the Trustee to seek to compel him to do so. Sohn listed food stamps issued to him from public assistance and thereby presumably caused a significant reduction of the amount in his budget for the expense of food for himself and his teenage sons. Sohn also included exempt funds in a checking account in his budget for purposes of calculating disposable income. He also included in his schedule of income monthly public assistance payments of $473 from Blue Earth County. The Court fails to appreciate the distinction made for the anticipated exempt tax refund, and Sohn's interpretation of the nature of the payments or credits as legislated declarations of the reasonableness and necessity of the funds for his support and to support his dependents, regardless of the requirements of § 1325(b), runs afoul of the controlling *Koch* decision.

Moreover, there is nothing in the record to suggest and no argument made that the budget Sohn proposed was not meaningful, realistic, and complete. No allegation was made that in fact Sohn needs his portion of the tax refund for reasonable and necessary expenses excluded from the scheduled budget on the assumption that those exempt credits would fund such unknown expenses. On the contrary, his scheduled budget affords a sizeable surplus from which to fund a healthy but not 100%

4. In any event, the payments Sohn expects to receive, as he describes them, seem to be more or less in the nature of supplemental support, public assistance, or another kind of welfare, even as much as they are credits for working and incentives to work or keep working. The Court in *Koch* cited with approval a

case in which exempt sources of welfare and unemployment benefits revenue were held to be subject to inclusion in the Chapter 13 disposable income test. *Koch,* 109 F.3d at 1289, citing *In re Sassower,* 76 B.R. 957, 960 (Bankr.S.D.N.Y.1987).

repayment plan under Chapter 13. The Court has no reason presently before it to question the veracity or accuracy of Sohn's schedules of income and expenses.

"[Section] 1325(b) balances the interests of debtors and creditors by independently limiting a debtor's ability to shelter income from exempt sources away from his creditors when he otherwise has sufficient income to meet his basic needs." *Id.* at 1290, citing *In re Morse,* 164 B.R. 651, 656 (Bankr.E.D.Wash.1994). At the end of the day, "[w]hile the court does not dispute that debtors are entitled to any exemption which they may validly claim, the ability to claim an exemption is an independent issue from whether debtors have the ability to repay their debts." *Koch,* 109 F.3d at 1290. For all these reasons, the Trustee's objection to confirmation must be sustained, and confirmation of the plan as presently proposed by the Debtor Joseph Sohn must be denied.

### III. Disposition

IT IS HEREBY ORDERED:

1. The Trustee's objection to confirmation is SUSTAINED; and

2. Confirmation of the Chapter 13 plan proposed by the Debtor Joseph R. Sohn, dated and filed June 3, 2003, is DENIED.