**In re George J. SHIELDS and Alice A. Shields, Debtors.**

**No. 8:04–bk–1894–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 1, 2005.

David R. Singha, St. Petersburg, FL, for Debtors.

Denise E. Barnett, Tampa, FL, for U.S. Trustee.

## ORDER ON UNITED STATES TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment filed by the United States Trustee.

The United States Trustee (the UST) previously filed a Motion to Dismiss this chapter 7 case pursuant to § 707(b) of the Bankruptcy Code. In the Motion to Dismiss, the UST asserts that the Debtors have the ability to pay a significant portion of their unsecured debt through a chapter 13 plan. Accordingly, the UST asserts that the case should be dismissed as a substantial abuse of chapter 7 of the Bankruptcy Code.

The Debtors oppose the Motion to Dismiss, and contend that all of their income is exempt from the claims of creditors. Consequently, the Debtors assert that their income should not be treated as "disposable income" for purposes of determining whether they have the ability to repay their creditors.

The United States Trustee filed this Motion for Summary Judgment asserting that the Debtor's social security, disability, and retirement benefits constitute "disposable income" within the meaning of § 1325(b) of the Bankruptcy Code, for purposes of determining whether this case should be dismissed as a substantial abuse of chapter 7 under § 707(b) of the Bankruptcy Code.

## Background

The Debtors, George and Alice Shields, filed a petition under chapter 7 of the Bankruptcy Code on February 2, 2004.

On their "Schedule D—Creditors Holding Secured Claims," the Debtors listed two creditors with secured claims in the total amount of $45,521.00. On their "Schedule E—Creditors Holding Unsecured Priority Claims," the Debtors listed one creditor with a claim of $3,859.82. On their "Schedule F—Creditors Holding Unsecured Nonpriority Claims," the Debtors listed five creditors (all of which are credit card issuers) with claims in the total amount of $50,327.14.

The Debtors disclosed on their schedules that they are both retired. On their original "Schedule I—Current Income of Individual Debtors" filed with the petition, the Debtors stated that they each receive social security income in the amount of $700.00 per month, that Mr. Shields receives "pension or retirement income" in the amount of $2,400.00 per month, and that Mrs. Shields receives "pension or retirement income" in the amount of $1,200.00 per month. Consequently, according to their schedules, the combined income for both Debtors equals $5,000.00 per month.

On their original "Schedule J—Current Expenditures of Individual Debtors," the Debtors stated that their average expenses total $3,863.00 per month.

The Debtors amended their schedules twice after the initial filing. On May 13, 2004, the Debtors amended their Schedules B, C, I, and J. (Doc. 12). The primary purpose of the Amended Schedule I was to identify Mr. Shield's "pension or retirement income" as a "100% Veterans' Disability Pension." On the Amended Schedule B, the Debtors listed all of their "rights" to the future benefits as personal

property. On the Amended Schedule C, they claimed their "right to receive" the future social security benefits, disability benefits, and retirement benefits as exempt.

On June 18, 2004, the Debtors filed their Second Amended Schedule B and Schedule C, again listing their right to receive future social security, disability, and retirement benefits as personal property, and claiming the right as exempt. (Doc. 19).

In her Motion to Dismiss Pursuant to 11 U.S.C. § 707(b), the UST asserts that "the Debtors appear to have the ability to pay a substantial portion (perhaps up to 70%) of their unsecured creditors over a three-year time period." (Doc. 10, p. 2). The calculation was based on the Debtors' stated income of $5,000.00 per month, stated expenses of $3,863.00 per month, and stated unsecured debt of $54,714.00.

In response, the Debtors assert that "all of the Debtors' income is either exempt or immune from creditor claims under Florida or Federal law and should not be considered as disposable income." (Doc. 15).

In her Motion for Summary Judgment, therefore, the UST contends that "the issue for summary judgment is whether social security and pension benefits should be considered as 'disposable income' as defined in 11 U.S.C. § 1325(b)(2) for the purposes of determining the Debtors' ability to fund a hypothetical Chapter 13 plan when conducting the analysis of whether a case should be dismissed pursuant to the substantial abuse provisions of 11 U.S.C. § 707(b)." (Doc. 22, p. 1).

### Discussion

Section 707(b) of the Bankruptcy Code provides in part:

**11 U.S.C. § 707. Dismissal**

.     .     .     .     .

■ (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts *if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter.* There shall be a presumption in favor of granting the relief requested by the debtor....

11 U.S.C. § 707(b)(Emphasis supplied). Subsection (b) of § 707 was added to the Bankruptcy Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. "Due to what was perceived as a growing number of bankruptcies being filed by people who were not 'needy,' the Bankruptcy Code was amended in 1984 so that debtors no longer had unfettered access to voluntary chapter 7 relief." *In re Zaleta,* 211 B.R. 178, 180 (Bankr.M.D.Pa.1997)(quoted in *In re Passis,* 235 B.R. 562, 565 (Bankr.D.N.J.1999)). "Section 707(b) was designed to discourage those persons who could repay their debts from using chapter 7 as an 'easy out,' and in so doing radically departed from the position Congress had taken on this issue when it enacted the Bankruptcy Reform Act of 1978." *In re Fitzgerald,* 155 B.R. 711, 715 (Bankr.W.D.Tex.1993)(quoted in *In re Passis,* 235 B.R. at 565).

### A. "Substantial abuse" under § 707(b)

As set forth in the statute, a chapter 7 case may be dismissed pursuant to § 707(b) if it is shown that the "granting of relief would be a substantial abuse" of the chapter. The term "substantial abuse" is not defined in the Bankruptcy Code.

■ Generally, courts determine whether a case constitutes a "substantial abuse" by considering the totality of the circumstances. In evaluating the totality of the

circumstances, courts look to such factors as (1) whether the debtor has sufficient income to fund a plan that would pay a substantial portion of the debtor's unsecured debts, (2) whether the debtor's case was filed as a result of a catastrophic event, (3) whether the debtor obtained an excessive amount or number of cash advances or goods, especially if such transactions occurred on the "eve of bankruptcy," (4) whether the debtor's budget is extravagant, and (5) whether the debtor misrepresented his income and expenses on his schedules. *In re Price,* 353 F.3d 1135, 1139–40 (9th Cir.2004). See also *In re Pier,* 310 B.R. 347, 352 (Bankr.N.D.Ohio 2004).

It is generally agreed, however, that a debtor's ability to repay a significant portion of his debts is the most important factor in determining whether a case represents a "substantial abuse" under § 707(b). "The primary factor defining substantial abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter 13 plan." *In re Price,* 353 F.3d at 1140.

Of the considerations set forth in *In re Krohn* that are relevant to a debtor's "need," the first one is of primary importance: whether the debtor has the ability to "repay his debts out of future earnings." ... In assessing a debtor's ability to repay his debts, a court's task is to hypothesize whether the debtor, if he or she had filed for relief under Chapter 13 of the Bankruptcy Code, as opposed to Chapter 7, would be able to repay their debts with relative ease.

*In re Pier,* 310 B.R. at 353. Finally, as Judge Killian stated in evaluating a Motion to Dismiss brought by the United States Trustee under § 707(b):

There are two basic approaches used by courts to determine what constitutes "substantial abuse." The first approach looks to the debtor's ability to repay his debts out of future income, as determined by his ability to fund a Chapter 13 plan.... The second adopts a "totality of the circumstances" test which evaluates a list of numerous factors which are relevant to the debtor's financial planning and could be evidence of substantial abuse.... Presently there are no controlling cases in the Eleventh Circuit. *Regardless of which approach is appropriate, the common thread among the circuits is that if the debtor has the ability to repay even a portion of his debts out of future income, he should not be in Chapter 7.*

*In re Cox,* 249 B.R. 29, 31 (Bankr.N.D.Fla.2000)(Emphasis supplied).

### B. "Disposable income"

■ A debtor's ability to repay a significant portion of his debts, therefore, is the primary factor in determining whether a case represents a "substantial abuse" under § 707(b) of the Bankruptcy Code.

■ To determine whether a debtor is able to repay a substantial portion of his debts, however, it is necessary to consider the amount of the debtor's "disposable income" that is available for such repayment. *In re Pier,* 310 B.R. at 353.

For § 707(b) purposes, ability to pay creditors is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding. *Koch,* 109 F.3d at 1288. Confirmation of a Chapter 13 plan requires, if an objection to confirmation is advanced, that the plan provide that all of the debtors' *projected disposable income* to be received during a three-year plan will be applied to plan payments.

*In re Butler,* 277 B.R. 917, 920 (Bankr. N.D.Iowa 2002)(Emphasis supplied).

■ In other words, in conducting the analysis under § 707(b), courts should determine whether a debtor is in "need" of chapter 7 protection by considering the debtor's ability to repay his debts out of future income. "In its assessment of 'need,' a court's task is to hypothesize the debtor's filing a Chapter 13 *and then to apply the 'projected disposable income' test of § 1325(b)(2)."* In re Stallman, 198 B.R. 491, 495 (Bankr.W.D.Mich.1996)(Emphasis supplied).

The term "disposable income" is defined in the Bankruptcy Code as "income which is received by the debtor and which is not reasonably necessary to be expended—(A) for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 1325(b)(2).

### C. "Exempt" income

■ In this case, it is undisputed that the Debtors' income consists of social security benefits, disability benefits, and retirement benefits. The Debtors acknowledge, for example, that their "only sources of income are from Social Security paid to both debtors, 100% Veteran's Disability payment paid to the husband and retirement benefits paid to the wife. Each of the sources of income of the debtors are exempt from the claims of creditors." (Doc. 28, Debtors' Response to Motion for Summary Judgment, pp. 1–2).

The UST does not challenge the character of the income. Instead, the UST asserts only that the income represents "disposable income" within the meaning of § 1325 of the Bankruptcy Code, regardless of whether or not it is exempt under non-bankruptcy law.

The Court finds that the UST's Motion for Summary Judgment should be granted.

Social security benefits, disability benefits, and retirement benefits should be treated as "income" for purposes of determining whether a debtor has "disposable income" under § 1325 of the Bankruptcy Code, even though such benefits are exempt from the claims of the debtor's creditors.

In the context of objections to confirmation in chapter 13 cases, for example, courts have consistently held that exempt revenues are subject to the disposable income analysis. See *In re Sohn,* 300 B.R. 332 (Bankr.D.Minn.2003)(exempt income tax refund); *In re Gebo,* 290 B.R. 168 (Bankr.M.D.Fla.2002)(workers' compensation settlement); *In re Tolliver,* 257 B.R. 98 (Bankr.M.D.Fla.2000)(workers' compensation); and *In re Hagel,* 171 B.R. 686 (Bankr.D.Mont.1994)(social security disability income). According to these cases, "the ability to claim an exemption is an independent issue from whether they [the debtors] have the ability to repay their debts." *In re Hagel,* 171 B.R. at 689.

Furthermore, Courts have also held that exempt revenues are subject to the disposable income analysis in the context of Motions to Dismiss brought under § 707(b) of the Bankruptcy Code.

In *In re Koch,* 109 F.3d 1285 (8th Cir. 1997), for example, the Eighth Circuit Court of Appeals found that the debtor's lifetime stream of workers' compensation payments should be considered in determining whether he had "disposable income" within the meaning of § 1325. The Court first looked to the provisions that govern chapter 13 cases.

Chapter 13 contains no language suggesting that exempt post-petition revenues are not Chapter 13 "income," and § 1325(b)(2) expressly defines "disposable income" to mean income not needed for debtor's support. Exemptions are less significant in protecting Chapter 13 debtors.... Debtor's fresh start is not endangered by a requirement that in-

come received during the life of the plan from otherwise exempt sources be included in the calculation of disposable income.

*In re Koch,* 109 F.3d at 1289.

Next, the Eighth Circuit specifically applied its ruling to "substantial abuse" determinations under § 707(b).

Congress is free to limit Chapter 7 protection to truly needy debtors who cannot fund a Chapter 13 plan with exempt and non-exempt income. We conclude that Congress did just that when it enacted § 707(b) and § 1325(b) in the 1984 amendments.

*Id.* at 1290. Consequently, the Court concluded that the debtor's exempt benefits were subject to the "disposable income" analysis under § 707(b) and § 1325 of the Bankruptcy Code.

Three years later, the Eighth Circuit reached the same conclusion in *In re Taylor,* 212 F.3d 395 (8th Cir.2000). The income at issue in *Taylor* consisted of payments from the debtor's ERISA-qualified pension fund.

The fact that a pension is exempt from the reach of creditors does not preclude a bankruptcy court from finding that the pension is also disposable income for purposes of Chapter 13. The question of whether income from a pension is exempt from creditors is a wholly independent inquiry from the question of whether the pension income is reasonably necessary to support the debtor.... The latter question is the pertinent inquiry for purposes of Chapter 13. *See Koch,* 109 F.3d at 1289. In regard to the former question, we note that nothing in the language of Chapter 13 prevents the funding of a Chapter 13 plan with exempt income.... Hence the question of whether a pension plan is exempt or otherwise restricted by a federal anti-alienation provision is irrelevant in a Chapter 13 context.

*In re Taylor,* 212 F.3d at 397. The Court concluded, therefore, that payments from the debtor's pension plan were properly included in the calculation of the debtor's disposable income, and that the chapter 7 case was properly dismissed as a substantial abuse of chapter 7 pursuant to § 707(b) of the Bankruptcy Code. *Id.*

Finally, in *In re Zuehlke,* 298 B.R. 610 (Bankr.N.D.Iowa 2003), the United States Trustee asserted that the debtors' chapter 7 case should be dismissed under § 707(b) because the debtors had the ability to fund a chapter 13 plan with their social security and disability benefits.

For § 707(b) purposes, courts measure debtors' ability to pay creditors by evaluating their financial condition in a hypothetical Chapter 13 proceeding. *Koch,* 109 F.3d at 1290. In order to overcome an objection to confirmation, a Chapter 13 plan must either pay claims in full or provide that all of a debtor's projected disposable income over three years will be applied to plan payments. 11 U.S.C. § 1325(b)(1)(B)(1998).

Chapter 13 defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2). *Disposable income includes disability payments and insurance policy proceeds. Koch,* 109 F.3d at 1288–89.

*In re Zuehlke,* 298 B.R. at 614(Emphasis supplied). Based on the amount of the debtors' social security and disability income, the Court in *Zuehlke* concluded that the debtors were capable of funding a chapter 13 plan, and that the case should be dismissed under § 707(b) of the Bankruptcy Code. *Id.* at 616.

## Conclusion

In this case, the Debtors acknowledge that they receive social security benefits, veteran's disability payments, and retirement benefits in the aggregate amount of $5,000.00 per month. In view of the authorities discussed above, the Court finds that such benefits are subject to the "disposable income" analysis set forth in § 1325(b) of the Bankruptcy Code, in the context of determining whether this case represents a substantial abuse of chapter 7 pursuant to § 707(b) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Summary Judgment filed by the United States Trustee is granted as set forth in this Order.

2. The social security benefits, veteran's disability payments, and retirement benefits received by the Debtors, George and Alice Shields, are subject to the "disposable income" analysis under § 1325(b) and § 707(b) of the Bankruptcy Code.

3. A hearing will be conducted on *April 6*, 2005, at *10:30* o'clock *a.m.* in Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida, to consider any remaining issues presented by the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b).